*IN THE UNITED STATES DISTRICT COURT FOR*
*THE EASTERN DISTRICT OF PENNSYLVANIA*

| | | |
|---|---|---|
| **TONY DELGUERICO and** | : | **CIVIL ACTION** |
| **LEIGH DELGUERICO** | | |
| **2895 Grouse Lane** | : | **No.** |
| **Riegelsville, PA 18077** | | |
| | : | |
| **and** | | |
| | : | |
| **DELGUERICO'S WRECKING** | | |
| **& SALVAGE, INC.** | : | |
| **2895 Grouse Lane** | | |
| **Riegelsville, PA 18077** | : | |
| | | |
| **Plaintiffs** | : | |
| | | |
| **v.** | : | |
| | | |
| **SPRINGFIELD TOWNSHIP,** | : | **JURY TRIAL DEMANDED** |
| **BUCKS COUNTY** | | |
| **2320 Township Road** | : | |
| **Quakertown, PA 18951** | | |
| | : | |
| **and** | | |
| | : | |
| **JEFFREY MEASE, individually and** | | |
| **in his official capacity as Code** | : | |
| **Enforcement Officer for Springfield** | | |
| **Township** | : | |
| **2320 Township Road** | | |
| **Quakertown, PA 18951** | : | |
| | | |
| **and** | : | |
| | | |
| **PETER LAMANA, RODNEY WIEDER** | : | |
| **JAMES HOPKINS, ROBERT ZISKO** | | |
| **and CHARLES HALDERMAN, JR.** | : | |
| **individually and in their official** | | |
| **capacities as members of the Board of** | : | |
| **Supervisors of Springfield Township** | | |
| **2320 Township Road** | : | |
| **Quakertown, PA 18951** | | |
| | : | |
| **and** | | |

*JOHN HAMMILL and*                  :
*PATRICIA HAMMILL*
*2845 Grouse Lane*                    :
*Riegelsville, PA 18077*
                                     :
*Defendants*

## COMPLAINT

*AND NOW,* Tony and Leigh DelGuerico, and DelGuerico's Wrecking & Salvage, Inc., by their attorneys Neil A. Morris Associates, P.C., hereby file this Complaint against Defendants seeking relief under the Fourteenth Amendment to the United States Constitution through 42 U.S.C. §1983, as well as pendent state claims.

## A.    PREAMBLE

This case concerns the arbitrary, capricious and abusive use of power by the Defendants, Springfield Township, its Code Enforcement Officer and the Springfield Township Board of Supervisors ("the Township Defendants"), acting in conjunction with the DelGuerico's neighbors, the Hammills, to illegally close down the Plaintiffs' waste hauling, salvage and recycling business that has been operating continuously on the DelGuerico property since the 1960s.

In June, 2001, for a third time in eleven (11) years, the Township Defendants manipulated their limitless governmental power to issue a Cease and Desist Order claiming that DelGuerico's Wrecking & Salvage violated the Township Nuisance Ordinance. The Order was blatantly disingenuous and false, since the Township Defendants previously were advised by the Township solicitor that Plaintiffs' activities are protected as a legal non-

conforming use.    The Township Defendants are currently defending the Order in conjunction with the Hammills, who are trying to force the Plaintiffs to purchase their property for a huge profit plus a penalty as the cost of continuing in business.

In the meantime, the Defendants are harassing and intimidating the Plaintiffs, trying to break them down by sending out a stream of inspectors to pore over the property. Plaintiffs seek recourse for the recurrent, unlawful attacks on their livelihood and the harassment, except for this action for violation of their constitutional substantive due process rights and pendent state law claims.

**B.    *PARTIES***

1.    Plaintiff, Tony DelGuerico, is an adult individual who, at all times material hereto, has resided at the above address, and who is the spouse of Plaintiff Leigh DelGuerico.  Plaintiff Tony DelGuerico is the President and a majority shareholder of DelGuerico's Wrecking and Salvage, Inc.

2.    Plaintiff, Leigh DelGuerico, is an adult individual who, at all times material hereto, has resided at the above address, and who is the spouse of Plaintiff Tony DelGuerico.

3.    Plaintiff, DelGuerico's Wrecking & Salvage, Inc., is a business which at all times material hereto has been engaged in waste hauling with attendant metal recycling/salvage on the property at the above address.

4.    Defendant, Springfield Township, Bucks County, is a Township of the Second Class, existing under the laws of the Commonwealth of Pennsylvania and located in Bucks County, Pennsylvania.  At all times material hereto, the Township has conducted business

3

at the above address.

5.      Defendant, Jeffrey Mease, is an adult individual employed as the Code Enforcement Officer/Fire Marshal for Springfield Township, Bucks County.  At all times material hereto, Defendant's principal place of business has been the Township offices located at the above address.

6.      Defendants Rodney Wieder, Peter Lamana, James Hopkins, Robert Zisko and Charles Halderman, Jr. are adult individuals and members of the Township Board of Supervisors for Springfield Township, Bucks County, and who, as members of the Board of Supervisors, at all times material hereto, maintained a principal place of business at the above address.  The Board of Supervisors is the governing body of Springfield Township and  possesses policy making authority pursuant to the Second Class Township Code, 53 P.S. §65607.

7.      Defendants John and Patricia Hammill are individuals, husband and wife, who reside at the above address.  Defendants are intervenors in the Plaintiffs' appeal to the Springfield Township Zoning Hearing Board of the Cease and Desist Order issued by Defendant Township on or about June 6, 2001, and are acting in conspiracy with the Township Defendants under color of state law, to further their own personal interests.

### C.    NATURE OF ACTION, JURISDICTION AND VENUE

8.    This Complaint seeks relief from and redress for various unlawful acts and practices which were committed by Defendants against Plaintiffs in violation of the Fourteenth Amendment to the United States Constitution through 42 U.S.C. §1983. Plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages (however, no punitive damages are sought from Defendant Springfield Township) as well as counsel fees and court costs. Plaintiffs also seek relief under Pennsylvania law under this Court's pendent and/or supplemental jurisdiction.

9.    The Court has subject matter jurisdiction over this case pursuant to 42 U.S.C. §1983, as well as 28 U.S.C. §§1331, 1343(a)(3) and 1343(a)(4).

10.    Venue in this district is proper under 28 U.S.C. §1391(b), in that Defendants conduct business here and/or reside here and/or all or a substantial part of the events and transactions giving rise to the claims herein occurred within the Eastern District of Pennsylvania.

### D.    COMMON AVERMENTS

11.    At all times material hereto, Plaintiffs Tony and Leigh DelGuerico have owned the property located at 2895 Grouse Lane, Riegelsville, Pennsylvania, where they reside. The bulk of that property, some 9.5 acres, had been purchased in 1970 by the parents of Plaintiff Tony DelGuerico (Anthony and Patricia DelGuerico) and Harry and Florence Geer.

12.    During the 1960s, Anthony DelGuerico was involved in salvage and waste removal business in Trevose, Bucks County. The Grouse Lane property was purchased for

5

use as the main location for this business and the family residence.

13.    Anthony DelGuerico began storing trucks, junk, metal recyclables and scrap metal on the property in the 1960s, even before purchasing it.

14.    The Geers and the DelGuericos subdivided their land and, in 1971, the DelGuericos obtained title to the 9.474 acre parcel.

15.    In 1975, Defendant Springfield Township adopted a Zoning Ordinance.

16.    Plaintiff Tony DelGuerico began working in the family business and took it over full time in or about 1983.  The business has remained basically unchanged from that time to the present.

17.    Prior to 1990, Plaintiffs Tony and Leigh DelGuerico never were aware of any claim by the Township that their use of the property was illegal, and the Township did not cite the family or the business for violating the junkyard, nuisance or zoning ordinances prior to 1990.

18.    For the first time, and for improper reasons, in 1990, the Geers objected to the DelGuericos' use of the property and the issue was brought before Defendant Township. The Geers had the opportunity to, but failed to prove that, the use was not non-conforming.

19.    On or about April 5, 1990, Defendant Township issued a "Cease and Desist Order" for the DelGuericos' business, claiming the operation of a junk yard (a place where salvageable material, including recyclables, accumulates) and solid waste disposal business at 2895 Grouse Lane violated the zoning ordinance.  (A copy of the Cease and Desist Order

is attached hereto as Exhibit "A").

20.    On or about September 21, 1990, Defendant Township filed a complaint against Anthony DelGuerico and Patricia DelGuerico, in the Court of Common Pleas, Bucks County, Pennsylvania.  (A copy of this complaint is attached hereto as Exhibit "B").  The complaint sought to enjoin the DelGuerico family from using their land as a solid waste and junk disposal site and to declare the disposal activity a public nuisance.

21.    The complaint was the only pleading filed in the case, but Plaintiffs Tony and Leigh DelGuerico were required to pay for attorneys and an environmental consultant to defend their right to operate the business.  Despite the "cease and desist" language, the Township knew it did not have a legal basis for the action, but intended to have the DelGuericos make a few minor "clean up" type changes, which they did, to bring the operation up to industry standards, which had changed over the years.  At no time was the DelGuerico business operated in an unclean manner.

22.    Plaintiffs' business, which has continued, at all times, was incorporated in 1993 as DelGuerico's Disposal Service, Inc.  DelGuerico's Disposal Service, Inc. commenced a growing and mutual business relationship with the Township, advertising in the Township's publications and appearing on the Township's Map at its current location.

23.    On or about March 1, 1993, the Township entered into a Recycling Agreement with Plaintiff Tony DelGuerico and DelGuerico's Disposal Service, Inc., for the provision of recycling services to Springfield Township at 2895 Grouse Lane.  This Agreement had

the Township cooperating and participating in Plaintiffs' waste removal and recycling business.

24.    Throughout the 1990s, the Defendant Township, through its Supervisors, disposed of recyclable materials at the DelGuerico property. The Recycling Agreement was continued through May, 2000 when the Township closed its drop off facility.

25.    At all times material hereto and particularly throughout the 1990s, the Township and its officials expressly allowed, permitted and willingly participated in Plaintiffs' business and benefitted therefrom. As a result,

(a)    Plaintiffs justifiably and reasonably relied on the Township's decision to allow them to continue and expand their business at 2895 Grouse Lane; and

(b)    The Township expressly recognized Plaintiffs' business activities and approved of them by issuing annual Waste Hauler's Licenses to Tony DelGuerico and DelGuerico's Disposal Service, Inc., at 2895 Grouse Lane.

26.    Though the waste business had been operating on Plaintiffs' premises continuously since the 1960s, as suburban sprawl reached further into the Bucks County countryside, housing developments began to proliferate in Springfield Township. When some of these new home buyers would later realize Plaintiffs' pre-existing business was in the area, they would complain to the Township.

8

27.    On or about February 24, 1997, the Plaintiffs' neighbor, Mrs. Dana Guerra, complained to the Board of Supervisors that the DelGuericos' business violated the Township Zoning Ordinance.  Defendant Mease correctly told her (and, on other occasions, Plaintiff Tony DelGuerico) that the Plaintiffs' operation was lawful as it was "grandfathered" for zoning purposes, *i.e.,* existed before the zoning laws and is exempt.

28.    Nevertheless, in March 11, 1997, the Board of Supervisors authorized its Legal Solicitor, James McNamara, to review the Zoning Ordinance as applicable to the DelGuerico property with intent to bring legal action.

29.    Solicitor McNamara issued his legal opinion on April 8, 1997, concluding the obvious, that there was an "overwhelming case" that the DelGuericos had a "vested right" to use the property as a recycling facility.   He also concluded that the DelGuericos would prevail if they appealed a Cease and Desist Order:

> "While no case has stated that mere inaction by the municipality is sufficient ***to establish a vested right to the use, other factors that are relevant and are present here include the Townships' long knowledge of the illegal use, the Township's investigation of the use in the past, the Township's own use of the service offered by the landowner which would be used a evidence that the township approved of the use and the failure to enforce the Cease and Desist Order in the past,*** especially after the Pennsylvania Department of Environmental Protection had concluded that the property was being used properly as a recycling facility under the Solid Waste Management Act." (emphasis supplied), (Copy of the of April 1, 1997 letter attached hereto as Exhibit "C").

30.    The Board of Supervisors discussed and adopted Solicitor McNamara's report on April 8, 1997 and took the unprecedented step of releasing it publically.

9

31.    In the Spring of 2000, as it had in 1990 and 1997, the Township resumed the cycle of questioning the Plaintiffs about their use of the property because a new resident complained.  At all times, Plaintiffs, out of their desire to be good citizens, indicated that they were willing to work with the Township to try to address any reasonable concerns.

32.    By letter dated June 13, 2000, Defendant Lamana, Chairman, Board of Supervisors, asked for a meeting to discuss concerns related to Plaintiffs' business.  Lamana wrote, "it is my understanding that ***even though you are grandfathered,*** there are limitations regarding expansion.  Just how far you can go beyond the original grandfathering is something that needs to be addressed."  (emphasis supplied) (See letter attached hereto as Exhibit "D").

33.    In 2001, Tony and Leigh DelGuerico sold the businesses' waste removal routes to a large waste removal company, BFI.  However, they continued to perform salvage and metal recycling which had continuously taken place since the 1960s through Plaintiff DelGuerico's Wrecking & Salvage, Inc.  The DelGuericos entered into contracts with other businesses to perform this work at the Grouse Lane premises.  This was the very same work they had performed all along, and the same use of the property that had twice before been objected to by the Township.

34.    In April or May, 2001, Township Supervisors Lamana and Wieder asked the Plaintiffs to renew the Recycling Agreement which had been cancelled in 2000.

35.    On or about June 6, 2001, the Township, through Defendant Code Enforcement Officer Mease, issued a second "Cease and Desist Order," claiming that Plaintiffs were using their property as a "solid waste facility and violation of the Nuisance Ordinance." This order stated that Plaintiffs "must immediately cease accepting refuse and scrap material being brought to your property and remove the accumulated material within thirty days." (A copy is attached hereto as Exhibit "E"). The Order was blatantly disingenuous and false, as Mease and the Township were aware that Plaintiffs' activities were "grandfathered" and protected as "vested rights" and not subject to the Cease and Desist Order.

36.    Significantly, this Cease and Desist Order was all inclusive, requiring the complete shut down of the Plaintiffs' entire business.

37.    The Nuisance Ordinance cited in the Cease and Desist Order included in the definition of "refuse" recyclable matter, glass and scrap matter, the same types of material the Plaintiffs always had stored on their property (including in 1990 with the first Cease and Desist Order).  Defendants' attempt to pretend that the use of DelGuerico property had changed is similar to the erroneous position taken by the Township when its position was overturned by the Bucks County Court of Common Pleas and the Pennsylvania Commonwealth Court in a case involving Gemstar/SKI Brothers, a junkyard/auto salvage yard.

38.    Issuance of the Cease and Desist Order was motivated by the other Defendants, including neighbors the Hammill Defendants, who bought a house on Grouse Lane in 1998.

11

This Order was without any basis in fact or law, since the Township twice before recognized the Plaintiffs' right to operate a recycling and solid waste disposal business. The Township Defendants acted on a purely political desire to appease the Hammill Defendants, who were attempting to use Township procedures to extract a huge profit from Plaintiffs for the Hammill property. This came after the Township refused the Hammill Defendants' request to purchase the Hammill property at a hefty profit for the Hammills. The Township Defendants at all times were aware of the illicit objectives of the Hammills.

39.    At a meeting between Plaintiffs, the Hammill Defendants, their attorney, Greg B. Emmons of Fox, Rothschild, O'Brien & Frankel and the Township Solicitor after the Cease and Desist Order was issued, it became obvious quickly that the Township, pushed by the Hammills, intended to close down the Plaintiffs' business.

40.    On July 5, 2001, Plaintiffs appealed the Cease and Desist Order to the Zoning Hearing Board of Springfield Township. (The appeal is attached hereto as Exhibit "F "). Plaintiffs contended that they enjoyed a legal, nonconforming use, not a nuisance, which had been "operating for many years with the municipality's failure to enforce for a long period of time, with its acquiescence, being a customer" of the Township. The Plaintiffs also maintained that, as had Solicitor McNamara and Code Enforcement Officer Mease, the Plaintiffs had vested rights to operate the waste hauling facility with attendant metal recycling.

41.    On or about August 8, 2001, solely for purposes of harassing Plaintiffs, in an arbitrary and capricious fashion, the Township filed a bogus complaint with the Pennsylvania Department of Environmental Protection ("DEP").  DEP inspected Plaintiffs' property and found it in good condition.  The Township also created an Environmental Advisory Council, on which Defendant Supervisor Hopkins serves, as another vehicle through which to file complaints against the Plaintiffs and to send investigators to the DelGuerico property and to harass and intimidate the Plaintiffs into giving up their business.

42.    One day of hearings have been held on Plaintiffs' zoning appeal before the Springfield Township Zoning Hearing Board, the members of which the Township Defendants appoint and control.

43.    The Hammills Defendants, who are a force behind the Township Defendants' conduct, have intervened as parties in the zoning appeal and, in fact, to a large extent, in conspiracy with the Township Defendants, control the Township's Zoning Hearing Board and the outcome.

44.    The Hammill Defendants, through Attorney Emmons, demanded that the Plaintiffs purchase the Hammills' property for $582,000 (well in excess of the $315,000 for which they purchased the property in mid-1998):

> "Following our telephone conversation in response to my letter to you of March 8, 2002, I have had the opportunity to review the property valuation with my client and can advise as to the terms and conditions that they would be willing to accept for the sale of their home to your client.

13

They have had several real estate brokers/appraisers look at the property; one from Weidel and also Carol Dorey whose opinion is well respected in the community. They have also had a home restorer look at the property because of the value added for the customized finishings. ***In consideration of the value suggested to them they are firm on a sales price of $525,000.00. In addition to the sales price, since this is a move that they are not requesting to take place but a sale for the benefit of your client and your client's future use and profit from the property they are also seeking costs. Accordingly, the costs of sale should be reimbursed together with the costs of moving and fees associated with the purchase of a new property. We would think that ten (10%) percent on top of the $525,000.00 would cover this. My clients also believe that costs incurred for their legal fees involved in a Settlement Agreement including the sale and purchase of their home should also be included in the payment to them. I would estimate that these fees would be approximately $5,000.00. Accordingly the total amount requested to provide for a purchase of my client's property would be $582,500.00.*** (emphasis supplied)(A copy of this letter, dated March 19, 2002, is attached hereto as Exhibit "G ").

45.    Plaintiff Tony DelGuerico recently has been recovering from very serious surgery for a debilitating eye problem, a detached retina. During this time, the Township has been harassing and embarrassing Plaintiffs by sending officials out to investigate various allegations and filing complaints with other government agencies against the Plaintiffs, to destroy Plaintiffs' will and force them out of business.

46.    Plaintiffs have entered into multi-year contracts with businesses to perform trash hauling and recycling from the Grouse Lane premises, which cannot be honored under the Cease and Desist Order.

47.    As a result of Defendants' actions, Plaintiffs were forced to retain attorneys and to pay attorneys fees to represent them in the zoning appeal as well as this action.

14

48.     The individual Plaintiffs, Tony and Leigh DelGuerico, have suffered great emotional distress, marital problems, and physical injury as a result of the conduct as aforesaid, manifesting in Tony DelGuerico's suffering of a detached retina requiring emergency surgery, headaches, insomnia, chest pains, nausea, stomach pains and other physical ailments, and/or aggravation of pre-existing injuries and conditions, which has caused Tony DelGuerico's to seek medical treatment and prescription medication.

E.     COUNT I -   PLAINTIFFS v. ALL DEFENDANTS FOR DAMAGES BASED ON DEFENDANTS' VIOLATION OF PLAINTIFFS' SUBSTANTIVE DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION THROUGH 42 U.S.C. §1983

49.     Plaintiffs' allegations set forth in paragraphs 1 through 48 above are hereby incorporated by reference as if same were set forth in their entirety hereat.

50.     The Due Process Clause of the Fourteenth Amendment of the United States Constitution provides that no "State shall deprive any person of life, liberty, or property, without due process of law. . ." and that the State may not deprive a person of his or her property for arbitrary and capricious reasons.

51.     Under the color of state, county and/or municipal laws, statutes, ordinances, regulations, customs or usages, the Defendants violated Plaintiffs' Civil Rights in contravention of 42 U.S.C. §1983 and the United States Constitution and amendments thereof.

52.     At all times material hereto, Plaintiffs have possessed a constitutionally protected vested property interest in the use of their property at 2895 Grouse Lane to operate

the business as their family has done for more than thirty years. This property interest includes the right to use the property to operate the business free from arbitrary, bad faith and irrational zoning actions against them by Defendant Township and its officials.

53.    The Township Defendants intentionally and/or negligently, carelessly, grossly negligently, or recklessly violated Plaintiffs' constitutionally protected substantive due process rights as follows:

(a)    Defendants have undertaken arbitrary, capricious, bad faith and irrational actions (for a third time) to prevent and/or restrict the Plaintiffs from operating their business on the property as they have done for more than thirty years, in the face of the Township's own admissions that its position is legally indefensible given Plaintiffs have vested property interests and grandfathered status; and

(b)    The fact that Defendants have proceeded now three different times on the substantially same basis establishes that Defendants will brazenly pursue false claims again and again until Plaintiffs are destroyed by the power and limitless resources of the municipal government;

(c)    Defendants have repeatedly used Township procedures and the legal system to cause Plaintiffs to incur legal expenses and to restrict and/or prevent Plaintiffs from being able to enjoy the use of their property; and

16

(d)    The Township Defendants have conspired with the Hammill Defendants for political and other illegal reasons to enable the Hammills to obtain an obscene profit by forcing the Plaintiffs to purchase the Hammill property in exchange for dropping their opposition to the Plaintiffs' business. This came after the Township refused the Hammills' demand that the Township purchase the Hammill property at a hefty profit.

54.    Pursuant to the Township's own zoning ordinances, rules and regulations, and state law, including, Section 908(9) of the Pennsylvania Municipalities Code ("MPC"), Defendants lacked discretionary authority to prevent Plaintiffs from operating a business on the property since that business had been "grandfathered" and was subject to "vested rights" protection.

55.    The Township Defendants' actions, as described above, were not rationally related to any legitimate government interest, but, rather, represented arbitrary, bad faith and capricious conduct, and were committed under the color of state law, depriving Plaintiffs of the privileges, protections and immunities granted them as citizens.

56.    At all times relevant hereto, the acts of Defendants Wieder, Lamana, Hopkins, Zisko, Halderman, Jr. and Mease were done in their official capacities and under the authority of their elected or appointed positions with Springfield Township and/or in their personal and/or individual capacities.

17

57.    The said acts of Defendants Wieder, Lamana, Hopkins, Zisko, Halderman, Jr. and Mease were willful, malicious and/or exhibited a total, reckless disregard for Plaintiffs' rights and well-being, and, as such, entitle Plaintiffs to an award of punitive damages against those Defendants in their official and/or individual and personal capacities.

58.    Defendants John and Patricia Hammill intentionally and/or negligently, carelessly or grossly negligently violated Plaintiffs' constitutionally protected substantive due process rights by acting under color of state law in conspiracy with the other Defendants. The Hammill Defendants had an express or implied agreement with state actors, *i.e.,* the Township Defendants, to use the Township's limitless governmental powers and processes to harass and intimidate the Plaintiffs into purchasing the Hammills' property at a significant profit, including penalty payments, to the Hammills, while reaping political and other rewards for the Township.

59.    The Hammills have acted together with and have obtained significant aid from Township officials, meeting with Township officials, intervening on behalf of the Township in the zoning board hearing, and using the Township's power as a weapon in support of their unlawful demand that Plaintiffs pay them an exorbitant amount of money plus a penalty payment as the price for the Plaintiffs' continued use of their property for business purposes.   These acts all go well beyond the typical rights of a neighboring landowner.

**WHEREFORE,** Plaintiffs demand that judgment be entered in their favor and against Defendants Springfield Township, Wieder, Lamana, Hopkins, Zisko, Halderman, Jr., Mease, John and Patricia Hammill, jointly and severally, and that an Order be entered holding that, *inter alia*:

(a)    Defendants have intentionally and/or negligently, carelessly, grossly negligently or and/or recklessly violated Plaintiffs' substantive due process rights under the Fourteenth Amendment to the United States Constitution through 42 U.S.C. §1983, by conspiring to deprive them of their property without due process of law;

(b)    the policies, practices and acts complained of herein are illegal, improper, unconstitutional and a violation of Plaintiffs' rights;

(c)    Defendants are enjoined from continuing to retaliate and act against Plaintiffs;

(d)    Plaintiffs have the right to use their property as a waste hauling and/or recycling facility and to carry on the activities that have been continuously engage in since the late 1960s. To the extent Defendants have a zoning ordinance prohibiting Plaintiffs' business activities, Plaintiffs' rights existed and vested before the passage of said zoning ordinance. In addition, the Township Defendants waived any rights to enforce the said zoning ordinance as to Plaintiffs by knowingly

19

recognizing Plaintiffs' rights for many years and even doing extensive

recycling business with Plaintiffs at Plaintiffs' property;

(e)    Plaintiffs are awarded compensatory damages in excess of $100,000;

(f)    Plaintiffs are awarded punitive damages in excess of $100,000 against

Defendants Wieder, Lamana, Hopkins, Zisko, Halderman, Jr., Mease,

John and Patricia Hammill (Plaintiffs do not seek punitive damages

against the municipal Defendant, Springfield Township);

(g)    Plaintiffs are awarded their reasonable attorney's fees, expenses and

costs of suit as the prevailing party, pursuant to 42 U.S.C. §1988; and,

(h)    awarding whatever injunctive, declaratory or other relief the Court

deems appropriate.

## PENDENT CLAIMS

**F.    COUNT II -   PLAINTIFFS v. DEFENDANTS WIEDER, LAMANA, HOPKINS, ZISKO, HALDERMAN, JR., MEASE, JOHN AND PATRICIA HAMMILL FOR VIOLATION OF PLAINTIFFS' RIGHTS UNDER THE CONSTITUTION OF THE COMMONWEALTH OF PENNSYLVANIA**

63.    Plaintiffs' allegations set forth in paragraphs 1 through 62 above are hereby

incorporated by reference as if same were set forth in their entirety hereat.

64.    Defendants' conduct has deprived the Plaintiffs of the rights guaranteed by

the Pennsylvania Constitution including, but not limited to, Article 1, Section 1.

65.    At all times relevant hereto, the acts of Defendants Wieder, Lamana, Hopkins,

Zisko, Halderman, Jr., and Mease were done in their official capacities and under the

20

authority of their positions with Springfield Township and/or in their personal or individual capacities.  The Hammill Defendants were acting under the color of state law in conspiracy with the other Defendants.

66.    The said acts of Defendants are willful, malicious, and/or exhibit a total, reckless disregard for Plaintiffs' rights and well-being, and, as such, entitle Plaintiffs to an award of punitive damages against those Defendants in their official and/or individual and personal capacities.

**WHEREFORE**, Plaintiffs demand that judgment be entered in their favor and against Defendants, jointly and severally, awarding compensatory damages in excess of $100,000, punitive damages in excess of $100,000, attorneys fees, interest and costs of suit and injunctive, declaratory or other relief the Court deems appropriate.

**G.  COUNT III -  PLAINTIFFS v. DEFENDANTS WIEDER, LAMANA, HOPKINS, ZISKO, HALDERMAN, JR., MEASE, JOHN AND PATRICIA HAMMILL FOR CIVIL CONSPIRACY UNDER PENNSYLVANIA LAW**

67.    Plaintiffs' allegations set forth in paragraphs 1 through 66 above are hereby incorporated by reference as if same were set forth in their entirety hereat.

68.    Defendants have conspired and agreed to act together to deprive Plaintiffs of their constitutional right to use and enjoy their property free from arbitrary, capricious and bad faith governmental actions.

69.    Defendants' acts as described above, including those with respect to  the attempts to shut down Plaintiffs' business, the parade of governmental inspections to which Defendants have subjected the Plaintiffs to harass and break them, and the attempt to have

21

Plaintiffs pay an exorbitant amount to purchase the Hammill property, have been and continue to be willful and malicious, intending to injure Plaintiffs.

70.    As a result, the Plaintiffs have been forced to expend legal fees to support their continued operation and are facing the loss of contracts with third parties because of the Cease and Desist Order.

*WHEREFORE*, Plaintiffs demand that judgment be entered in their favor and against Defendants, jointly and severally, awarding compensatory damages in excess of $100,000, punitive damages in excess of $100,000, attorneys fees, interest and costs of suit and injunctive, declaratory or other relief the Court deems appropriate.

### H.  COUNT IV -  *PLAINTIFFS TONY AND LEIGH DELGUERICO v. DEFENDANTS MEASE, LAMANA, WIEDER, HOPKINS, ZISKO, HALDERMAN, JR., JOHN AND PATRICIA HAMMILL FOR DAMAGES FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

71.    Plaintiffs' allegations set forth in paragraphs 1 through 70 above are hereby incorporated by reference as if same were set forth in their entirety hereat.

72.    The extreme and outrageous conduct of Defendants described above, including but not limited to aggressively pursuing, contrary to prior legal advice, the closure of Plaintiffs' business three times in eleven years; repeatedly harassing and intimidating Tony and Leigh DelGuerico by, *inter alia*, sending a stream of governmental inspectors to enter the property and to investigate baseless complaints instituted and encouraged by Defendants; and attempting to force the Plaintiffs purchase the Hammill property at an enormous profit together with a penalty payment as the cost for continuing in business, has

been undertaken in concert and with the specific intent to cause physical pain and emotional suffering to Plaintiffs Tony and Leigh DelGuerico.

73.    As a consequence of the intentional and malicious conduct of Defendants, Plaintiffs have sustained great emotional distress and physical injury as a result of the conduct as aforesaid, manifesting in marital problems, Tony DelGuerico's suffering a detached retina that required immediate surgery, headaches, insomnia, chest pains, nausea, stomach pains and other physical ailments, and/or aggravation of pre-existing injuries and conditions, which have caused Tony DelGuerico to seek medical treatment and prescription medication.

*WHEREFORE*, Plaintiffs demand that judgment be entered in their favor and against Defendants, jointly and severally, awarding compensatory damages in excess of $100,000, punitive damages in excess of $100,000, attorneys fees, interest and costs of suit and injunctive, declaratory or other relief the Court deems appropriate.

I.   *COUNT V  -    PLAINTIFFS v. DEFENDANTS MEASE, LAMANA, WIEDER,
            HOPKINS, ZISKO, HALDERMAN, JR., JOHN AND PATRICIA
            HAMMILL  FOR DAMAGES FOR INTENTIONAL INTERFERENCE
            WITH CONTRACTUAL RELATIONS*

74.     Plaintiffs' allegations set forth in paragraphs 1 through 73 above are hereby incorporated by reference as if same were set forth in their entirety hereat.

75.     Plaintiffs have entered into contractual relations for third parties for the provision of services at the Grouse Lane property.

76.     Defendants' issuance of a Cease and Desist Order was undertaken with the specific intent of interfering with Plaintiffs' contractual relations, and to prevent other customers and/or companies from entering into contracts with the Plaintiffs in the future.

77.     Enforcement of the Cease and Desist Order will cause the Plaintiffs to breach existing contracts with third parties, incurring lost revenues and profits and attorneys fees, together with emotional distress, loss of reputation and other consequential damages, together with depriving Plaintiffs of the opportunity to obtain additional business.

78.     Defendants' actions as described above are intentional, willful and outrageous, giving rise to punitive damages.

*WHEREFORE*, Plaintiffs demand that judgment be entered in their favor and against Defendants, jointly and severally, awarding compensatory damages in excess of $100,000, punitive damages in excess of $100,000, attorneys fees, interest and costs of suit and injunctive, declaratory or other relief the Court deems appropriate.

*Respectfully submitted,*

_____

*NEIL A. MORRIS*
*Attorney I.D. No. 29289*


_____

*JULIE L. KITZE*
*Attorney I.D. No. 57103*

*Attorneys for Plaintiffs, Tony and Leigh DelGuerico and DelGuerico's Wrecking & Salvage Inc.*

*OF COUNSEL:*

*NEIL A. MORRIS ASSOCIATES, P.C.*
*Mellon Bank Center*
*1735 Market Street, 43rd Floor*
*Philadelphia, PA 19103*
*Tel. (215) 751-0600*
*Fax (215) 751-1425*
*nmorris@namapc.com*

*Date:   May 30, 2002*