*IN THE UNITED STATES COURT FOR*
*THE EASTERN DISTRICT OF PENNSYLVANIA*

| | | |
|---|---|---|
| *TONY DELGUERICO, et al.* | : | *CIVIL ACTION* |
| *Plaintiffs* | : | *No. 02-CV-3453* |
| *v.* | : | |
| *SPRINGFIELD TOWNSHIP, et al. :* | | |
| *Defendants* | : | |

*PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO*
*DISMISS OF DEFENDANTS JOHN AND PATRICIA HAMMILL*
*PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)*

*and*

*BRIEF IN SUPPORT THEREOF*

*NEIL A. MORRIS*
*JULIE L. KITZE*
*Attorneys for Plaintiffs, Tony*
*and Leigh DelGuerico and*
*DelGuerico's Wrecking &*
*Salvage Inc.*

*OF COUNSEL:*

*NEIL A. MORRIS ASSOCIATES, P.C.*
*Mellon Bank Center*
*1735 Market Street, 43rd Floor*
*Philadelphia, PA 19103*
*Tel. (215) 751-0600*
*Fax (215) 751-1425*
*nmorris@namapc.com*

*Date:  August 26, 2002*

*IN THE UNITED STATES COURT FOR*
*THE EASTERN DISTRICT OF PENNSYLVANIA*

| | | |
|---|---|---|
| *TONY DELGUERICO, et al.* | : | *CIVIL ACTION* |
| *Plaintiffs* | : | *No. 02-CV-3453* |
| *v.* | : | |
| *SPRINGFIELD TOWNSHIP, et al. :* | | |
| *Defendants* | : | |

*ORDER*

*AND NOW,* this           day of                    , 2002, upon consideration of ***Motion To Dismiss Of Defendants John Hammill And Patricia Hammill Pursuant To Federal Rule of Civil Procedure 12(b)(6),*** and Plaintiffs' Response in opposition thereto, it is hereby ***ORDERED*** and ***DECREED*** that Defendants' Motion is ***DENIED****.*

*BY THE COURT*:

_____

*JOHN R. PADOVA*                *J.*

2

*IN THE UNITED STATES COURT FOR*
*THE EASTERN DISTRICT OF PENNSYLVANIA*

| | | |
|---|---|---|
| *TONY DELGUERICO, et al.* | : | *CIVIL ACTION* |
| *Plaintiffs* | : | *No. 02-CV-3453* |
| *v.* | : | |
| *SPRINGFIELD TOWNSHIP, et al.* | : | |
| *Defendants* | : | |

*PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO*
*DISMISS OF DEFENDANTS JOHN AND PATRICIA HAMMILL*
*PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)*

*AND NOW*, Plaintiffs, by their attorneys, Neil A. Morris Associates, P.C., hereby

file this response opposing Defendants John and Patricia Hammill's motion to dismiss and

state as follows in support thereof:

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted in part, denied in part.  Defendants correctly quote from the

Complaint.  However, contrary to the averment, the Hammills are included in the allegations

throughout the Complaint.

5.      Admitted.

6.      Admitted.  Those averments provide background action to the most recent

situation, which does involve the Hammills.

7.    Admitted in part, denied in part.  Admitted that Defendants properly quoted language from the Complaint.  The remainder of the paragraph is denied.  By way of further answer, Plaintiffs have adequately stated their claim and are not required to prove their allegations at this stage in the case.  Pleadings must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  F.R.C.P. 8(a)(2); *Piazza v. Major League Baseball,* 831 F. Supp. 420, 428 (E.D. Pa. 1993)(Padova, J.).  "Dismissal of a complaint is proper *only* where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Township of South Fayette v. Allegheny Housing Authority,* 27 F.Supp.2d 582, 593 (W.D.Pa. 1998), *aff'd,* 185 F.3d 863 (3d Cir. 1999).

8.    Admitted in part, denied in part.  It is admitted that Defendants properly quoted language from the Complaint, with the exception of the matter in brackets.  The remainder of the paragraph is denied.  By way of further answer, the Plaintiffs have adequately stated their claim and are not required to prove their allegations at this stage in the case.  F.R.C.P. 8(a)(2); *Piazza, supra,* at 831 F. Supp. 428; *Township of South Fayette v. Allegheny Housing Authority, supra,* at 27 F.Supp.2d 593.

9.    Denied as stated.  To the contrary, rather than a settlement discussion, the Hammills' attorney, Greg Emmons, made a demand that Defendants purchase the property for an exorbitant amount, several hundred thousand dollars more than the Hammills paid for the property a mere two years before, together with a penalty payment and attorneys fees to

the Hammills. The Plaintiffs did not respond to this letter, which was a itemized demand for payment. The Court must accept the factual allegations of the Complaint (not the Defendants' version of these allegations in their motion) as true at this stage of the proceedings and view them in the light most favorable to Plaintiffs. ***Rocks v. City of Philadelphia,*** 868 F.2d 644, 645 (3d Cir.1989). Moreover, contrary to Defendants' suggestion, the Emmons letter is admissible in the proceedings. ***Towerridge, Inc. v. T.A.O., Inc.,*** 111 F.3d 758, 770 (10th Cir. 1997); ***Carney v. The American University,*** 151 F.3d 1090, 1095-96 (D.C. Cir. 1998); ***Winchester Packing, Inc. v. Mobil Chemical Co.,*** 14 F.3d 316, 319 (7th Cir. 1994); ***Scott v. Goodman,*** 961 F.Supp. 424, 438 (E.D.N.Y. 1997), *aff'd,* 191 F.3d 82 (2d Cir. 1999).

10.    Admitted.

11.    Denied.    Plaintiffs' allegations in the Complaint (not Defendants' characterization of those allegations) must be accepted as true at this stage of the proceedings and viewed in the light most favorable to Plaintiffs. ***Rocks,*** *supra,* at 868 F.2d at 645. Defendants' actions, to be further developed in discovery, have gone well beyond those of the normal landowner and have been taken through the power of the Township government, though it was understood by all that the Plaintiffs had a legal right to continue to operate their business on their property.

12.    Denied.    Defendants' actions, to be further developed in discovery, have gone well beyond those of the normal landowner and have been taken through the power of

the Township government, though it was understood by that all the Plaintiffs had a legal right to continue to operate their business on their property.

13.    Denied.  Defendants' actions, to be further developed in discovery, have gone well beyond those of the normal landowner and have been taken through the power of the Township government, though it was understood by all that the Plaintiffs had a legal right to continue to operate their business on their property.

14.    Denied.

15.    Denied as stated.  To be accurate, Plaintiffs must show that Defendants acted under color of state law, which can be demonstrated by showing a conspiracy with state actors.

16.    Denied.   Plaintiffs have adequately pled a conspiracy.  By way of further answer, Plaintiffs state that Defendants are applying "bad" law requiring heightened pleading in civil rights cases.  This law was overturned by the well-known U.S. Supreme Court case, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160 (1993); *Piazza, supra,* at 831 F. Supp. 428.  Moreover, Plaintiffs will show, after receiving appropriate discovery, that all of the Defendants were acting together to close down Plaintiffs' business and enable the Hammills to make a profit on their property at Plaintiffs' expense.

17.    Denied.   By way of further answer, Plaintiffs state that Defendants are applying "bad" law requiring heightened pleading in civil rights cases.   This law was

4

overturned by the well-known U.S. Supreme Court case, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160 (1993).

18.     Denied.  To the contrary, there is federal jurisdiction over the Plaintiffs' substantive due process claim against the Hammills under 42 U.S.C. §1983.

*WHEREFORE,* Plaintiffs request that the Court deny Defendants' motion to dismiss the Complaint.

*Respectfully submitted,*

_____

*NEIL A. MORRIS*
*JULIE L. KITZE*
*Attorneys for Plaintiffs, Tony and Leigh DelGuerico and DelGuerico's Wrecking & Salvage Inc.*

*OF COUNSEL:*

*NEIL A. MORRIS ASSOCIATES, P.C.*
*Mellon Bank Center*
*1735 Market Street, 43rd Floor*
*Philadelphia, PA 19103*
*Tel. (215) 751-0600*
*Fax (215) 751-1425*
*nmorris@namapc.com*

*Date:   August 26, 2002*

*IN THE UNITED STATES COURT FOR*
*THE EASTERN DISTRICT OF PENNSYLVANIA*

| | | |
|---|---|---|
| **TONY DELGUERICO, et al.** | : | **CIVIL ACTION** |
| **Plaintiffs** | : | **No. 02-CV-3453** |
| **v.** | : | |
| **SPRINGFIELD TOWNSHIP, et al.** | : | |
| **Defendants** | : | |

**BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE IN
OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS
JOHN AND PATRICIA HAMMILL PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6)**

## I.    INTRODUCTION

In their motion to dismiss, the Township Defendants[1] construct "straw men" argument and proceed to demolish those arguments.  By do doing, the Township Defendants hope to distract the Court's attention from the real claims Plaintiffs Tony and Leigh DelGuerico and DelGuerico's Wrecking & Salvage, Inc. ("Plaintiffs") have pled in their Complaint.

 Contrary to what Defendants suggest in their brief, Plaintiffs have not pled a Fifth Amendment takings claim.  The words "Fifth Amendment" are noti, the Defendants The basis for Defendants John and Patricia Hammill's motion to dismiss is the assertion that plaintiffs bringing civil rights cases in the Third Circuit must plead their claims with "particularity."  However, like any other plaintiff filing a federal claim, Plaintiffs Tony and

---

[1] Defendants Springfield Township, Jeffrey Mease, Peter Lamana, Rodney Wieder, James Hopkins, Robert Zisko and Charles Halderman, Jr.  are referred to collectively as the "Township Defendants."

Leigh DelGuerico and DelGuericos's Wrecking & Salvage, Inc. ("Plaintiffs") need only meet the notice pleading requirements. Discovery will enable Plaintiffs to learn of additional facts to establish their claims.

According to Defendants, Plaintiffs have failed to plead with particularity, the allegations of a conspiracy between the Hammills and the Township, its officers, representatives and agents. The word "particularity" appears five times in Defendants' memorandum of law. That concept also is expressed with different words in other sentences of the memorandum.

Defendants' position is simply untenable, having been foreclosed by the United States Supreme Court's 1993 decision in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160 (1993). There, the Supreme Court unequivocally held that lower courts have no right to impose heightened pleading requirements on plaintiffs bringing civil rights cases. For this reason, the motion should be denied.

The other points made in Defendants' memorandum are similarly, if not so glaringly, unavailing. Plaintiffs' Complaint is adequate for the present purposes and Plaintiffs should be allowed to proceed to discovery on their claims against the Hammills. Indeed, Plaintiffs have actually filed a very detailed Complaint establishing a basis for each claim asserted, much more than is required under the notice pleading requirements of Rule 8, F.R.C.P.

## II.    STATEMENT OF FACTS

Plaintiffs initiated this action to contest the arbitrary, capricious and abusive use of power by the Defendants, Springfield Township, its Code Enforcement Officer and the Springfield Township Board of Supervisors ("the Township Defendants"), acting in conjunction with the DelGuerico's neighbors, the Hammills, to illegally close down the Plaintiffs' waste hauling, salvage and recycling business that has been operating continuously on the DelGuerico property since the 1960s.  Plaintiffs allege all Defendants were aware of Plaintiffs' property rights, yet for arbitrary reasons they have conspired to violate those rights.  Rarely are civil rights violations so blatant.

Plaintiff Tony DelGuerico is the President and a majority shareholder of Plaintiff DelGuerico's Wrecking and Salvage, Inc. (Complaint, attached as Exhibit "A" to Defendants' Motion To Dismiss, ¶1).  Plaintiff Leigh DelGuerico is Tony DelGuerico's spouse.  (C. ¶2).

Since the early 1980s, Tony and Leigh DelGuerico have continuously operated a business on their property at 2895 Grouse Lane, Riegelsville, Springfield Township, Bucks County, Pennsylvania.  (C. ¶16).   They took over the business from Tony's father, who started in the salvage and waste removal business on the property in the 1960s.  (C. ¶13). The Plaintiffs' business has consisted of a waste hauling, salvage and recycling operation, including storage of recyclable metals and scrap metal on the property until it is shipped to another location.  (C. ¶¶13, 16).

Defendant Springfield Township has engaged in mutual business relationship with the Plaintiffs. Among other things, the Township entered into a Recycling Agreement whereby the Township recycling program operated on Plaintiff's property, and the Township issued annual waste-hauling licenses to the DelGuerico's business, then called DelGuerico's Disposal Service, Inc. (C.¶¶22-25).

From time to time over the years, as suburban sprawl reached into the countryside, new homebuyers would realize that Plaintiffs' business was in the area. The new residents/voters would complain to the Township. Upon receiving complaints, the Township would act to appease neighbors by taking action against the Plaintiffs' business, though the business was operating legally, a fact of which the Township was well aware. (C. ¶26).

As a result of a neighbor's complaint in 1991, the Township issued a Cease and Desist Order against the DelGuericos and filed a complaint in court to: (1) enjoin the DelGuericos from using their land as a solid waste and junk disposal site; and (2) declare the disposal activity to be a public nuisance. (C. ¶20). The Township eventually abandoned its legal action, since it was baseless and was intended to have the DelGuericos make a few minor "clean up" type changes. (C. ¶21).

A second neighbor complaint in 1997 prompted the Township to again examine the legality of the DelGuericos' business in the context of Township zoning and other ordinances. (C. ¶¶ 27-28). The Township's solicitor, James McNamara, concluded that there was an "overwhelming case" that the DelGuericos had a "vested right" to use the

property as a recycling facility and that the DelGuericos would prevail if they appealed a Cease and Desist Order. (C. ¶29). Solicitor McNamara's April 1, 1997 opinion letter, which is attached to the Complaint as Exhibit "C," was released to the public. (C. ¶30). Mr. McNamara continues as the Township Solicitor today.

In 1998, Defendants John and Patricia Hammill moved to 2845 Grouse Lane. (C. ¶44). Apparently they claim that they somehow did not notice Plaintiffs' business next door before purchasing their property. When Defendants did learn of the business they became concerned about the value of their property and set out to force Plaintiffs to purchase the property from the Hammills at a hefty profit under the pretext of the Hammills using the Township to threaten to close Plaintiffs' business down. It is the Plaintiffs' position that none of this could have happened without the arbitrary and capricious actions of the Township whereby the Township and the Hammills joined with each other against the Plaintiffs.

After the Hammills first tried to get the Township to buy the property without success, the Hammills went after the DelGuericos, with the Township's assistance. The Township officials, realizing that they had no basis to challenge the Plaintiffs' business, saw the Hammills' willingness to object and proceed as another opportunity to bring an action against Plaintiffs (the sham that it is) in the hope of, not winning under the law but rather using their governmental power to crush Plaintiffs financially and emotionally into giving up. (C. ¶38).

On June 6, 2001, the Defendant Township Code Enforcement Officer Jeffrey Mease issued a Cease and Desist Order against Tony and Leigh DelGuerico, effectively shutting the business down.  (C. ¶35, Ex. "E").  This was the third time in eleven (11) years that the Township Defendants attempted to put the Plaintiffs out of business each time for the same bogus reasons.  What made this third time all the more egregious and blatant was Solicitor McNamara's letter of April 1, 1997 which explained that the Township's position was without merit.

According to the Complaint, the Township Defendants sought to close down the Plaintiffs' business in conjunction with the Hammills.  The Complaint states:

> "38.   Issuance of the Cease and Desist Order was motivated by the other Defendants, including neighbors the Hammill Defendants, who bought a house on Grouse Lane in 1998.  This Order was without any basis in fact or law, since the Township twice before recognized the Plaintiffs' right to operate a recycling and solid waste disposal business.  The Township Defendants acted on a purely political desire to appease the Hammill Defendants, who were attempting to use Township procedures to extract a huge profit from Plaintiffs for the Hammill property.  This came after the Township refused the Hammill Defendants' request to purchase the Hammill property at a hefty profit for the Hammills.  The Township Defendants at all times were aware of the illicit objectives of the Hammills.
>
> 39.   At a meeting between Plaintiffs, the Hammill Defendants, their attorney, Greg B. Emmons of Fox, Rothschild, O'Brien & Frankel and the Township Solicitor after the Cease and Desist Order was issued, it became obvious quickly that the Township, pushed by the Hammills, intended to close down the Plaintiffs' business."  (C. ¶¶38-39).

11

At some point, the Hammills and the Township Defendants began to conspire to shut down the business and Plaintiffs believe discovery will establish when that was. The Hammills and the Township Defendants went well beyond the usual relationship of the complaining resident who provides information to the Township and the Township "takes it from there." The Township and the Hammills acted to shut down the business although all concerned knew that the Township previously had determined that the DelGuericos had a legal right to continue in business. It is alleged that both the Township and the Hammills were aware of Plaintiffs' property rights and that, *inter alia,* the Hammills, with their big firm lawyer (an alleged expert in real estate matters) were going to pressure the Township into joining them, though the Hammills well knew that the Township was violating Plaintiffs' rights in an effort to have the Hammills obtain a financial windfall.

The Plaintiffs appealed the Cease and Desist Order to the Township's Zoning Hearing Board. The zoning hearing is pending. At the most recent hearing, Tony DelGuerico was not able to testify because of a detached retina (caused at least in part by Defendants' actions) which was being treated by additional extensive and very serious surgery. (C. ¶¶40-42). Plaintiffs' counsel in that proceeding offered to put witnesses on out of order but that was not acceptable to the Zoning Hearing Board. (The Defendants are now trying to blame Plaintiffs delaying the proceeding).

The Hammills have intervened in the DelGuerico's appeal of the Cease and Desist

12

Order to represent the joint interests of the Township and the Hammills in ridding the Township of the Plaintiffs, notwithstanding the Township's own legal determination (of which the Hammills are well aware) that the business has the right to operate at its present location. (C. ¶¶43-44). The Hammills' attorney is controlling the Township's zoning proceedings and the pre-ordained outcome of those hearings and the Defendants are in constant contact to devise their strategy. (*Id.*).[2]

Additionally, the Hammills, in conjunction with the Township, are trying to force the Plaintiffs to purchase the Hammills' property for $582,000, a shockingly higher amount than the $315,000 for which they purchased the property in 1998. This figure includes a penalty payment to the Hammills purchasing a property on a street that obviously included Plaintiffs' business, plus their attorneys fees. (C. ¶44).

Based on the above facts, Plaintiffs have sued all Defendants for violating Plaintiffs' substantive due process rights to be free from arbitrary, capricious, bad faith and irrational actions by the Township and its officials. The allegations in Count I with respect to the Hammills include that:

> "53(d). The Township Defendants have conspired with the Hammill Defendants for political and other illegal reasons to enable the Hammills to obtain an obscene profit by forcing the Plaintiffs to purchase the Hammill property in exchange for dropping their opposition to the Plaintiffs' business. This came after the Township refused the Hammills' demand that the Township purchase the Hammill property at a hefty profit.

---

[2] Plaintiffs have not sought to stay or postpone the zoning hearing. Plaintiffs' claims are premised on substantive, not procedural, due process.

58.    Defendants John and Patricia Hammill intentionally and/or negligently, carelessly or grossly negligently violated Plaintiffs' constitutionally protected substantive due process rights by acting under color of state law in conspiracy with the other Defendants.  The Hammill Defendants had an express or implied agreement with state actors, *i.e.,* the Township Defendants, to use the Township's limitless governmental powers and processes to harass and intimidate the Plaintiffs into purchasing the Hammills' property at a significant profit, including penalty payments, to the Hammills, while reaping political and other rewards for the Township.

59.    The Hammills have acted together with and have obtained significant aid from Township officials, meeting with Township officials, intervening on behalf of the Township in the zoning board hearing, and using the Township's power as a weapon in support of their unlawful demand that Plaintiffs pay them an exorbitant amount of money plus a penalty payment as the price for the Plaintiffs' continued use of their property for business purposes.  These acts all go well beyond the typical rights of a neighboring landowner."  (C. ¶¶53(d), 58, 59).

The pendent claims in the Complaint are based on similar allegations.  (C. ¶¶63-78).

### III.    STANDARD OF REVIEW

Given the "notice pleading" requirements of the Federal Rules of Civil Procedure, a party seeking to dismiss a complaint, pursuant to Rule 12(b)(6), F.R.C.P., faces an substantial burden.  The role of the complaint is to provide the defendant with "fair notice of what plaintiff's claim is and the grounds upon which it rests."  ***Conley v. Gibson,*** 355 U.S. 41, 47, 78 S.Ct. 99, 103 (1957).  Pleadings must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  F.R.C. P. 8(a)(2); ***Piazza v. Major League Baseball,*** 831 F. Supp. 420, 428 (E.D. Pa. 1993)(Padova, J.).

"Dismissal of a complaint is proper ***only*** where it appears beyond doubt that the

14

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Township of South Fayette v. Allegheny Housing Authority,* 27 F.Supp.2d 582, 593 (W.D.Pa. 1998), *aff'd,* 185 F.3d 863 (3d Cir. 1999); *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir. 1994).  The court's task when reviewing a complaint pursuant to a motion to dismiss, is "a limited one":

> "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."  *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (1974).

The Third Circuit in *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989) instructs:

> "The applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party."

Here, Plaintiffs have sufficiently pled federal and state claims against the Hammill Defendants, which should be allowed to proceed into discovery.

## IV.    ARGUMENT

### A.    DEFENDANTS' MOTION SHOULD BE DENIED BECAUSE THE UNITED STATES SUPREME COURT HAS REJECTED THE PREMISE OF DEFENDANTS' ARGUMENT -- THAT CIVIL RIGHTS CASES MUST BE PLED WITH PARTICULARITY

Defendants' motion presents the question of whether the Plaintiffs "have stated with sufficient particularity a conspiracy between the Hammills and the Springfield Township Defendants" to withstand a 12(b)(6) motion.  [Defendants' Memorandum Of Law ("DM") at 4].  It is clear throughout Defendants' memorandum that they are relying on case law that has been rejected by the United States Supreme Court.

This is particularly obvious on page 7 of Defendants' memorandum, with the statement:  "However, in Civil Rights actions, the Third Circuit applies a stringent standard, requiring the Complaint to state specific facts from which the substantiality of the claim may be assessed.  See, *e.g.*, *DiGiovanni vs. City of Philadelphia,* 531 F. Supp. 141 (E.D. Pa. 1981)."  (DM at 7).  Defendants further opine that "[o]nly allegations of conspiracy which are particularized, such as those addressing (1) the period of the conspiracy, (2) the object of the conspiracy, and (3) certain actions of the alleged conspirators taken to achieve that purpose will be deemed sufficient."  (DM at 7-8).

However, Federal Rule 9(b) only requires claims for fraud or mistake to be pled with the particularity Defendants demand.  See, Rule 9(b), F.R.C.P.  Those claims are not present in the Complaint.  Indeed, the United States Supreme Court has confirmed that only fraud and mistake claims must be pled with particularity and lower courts may not impose

16

heightened pleadings standards for civil rights cases.  The issue came before the Supreme

Court when the Fifth Circuit imposed a more rigorous pleading standard on a section 1983

action.  ***Leatherman, supra,*** at 507 U.S. 163, 113 S.Ct. 1161.  The  Court stated:

> "We granted certiorari to decide whether a federal court may
> apply a "heightened pleading standard" – more stringent that the
> usual pleading requirements of Rule 8(a) of the Federal Rules
> of Civil Procedure – in civil rights cases alleging municipal
> liability under Rev. Stat. § 1979, 42 U.S.C. § 1983.  ***We hold***
> ***that it may not.***"  *Id.* at 507 U.S. 164, 113 S.Ct. 1161.

The Court concluded that the Federal Rules did not require heightened pleadings for

section 1983 actions and that claims without merit would be "weeded out" through summary

judgment and discovery:

> "We think that it is impossible to square the "heightened
> pleading standard" applied by the Fifth Circuit in this case with
> the liberal system of "notice pleading" set up by the Federal
> Rules.  Rule 8(a)(2) requires that a complaint include only "a
> short and plain statement of the claim showing that the pleader
> is entitled to relief."  In ***Conley v. Gibson***, 355 U.S. 41, 78 S.Ct.
> 99, 2 L.Ed.2d 80 (1957), we said in effect that the Rule meant
> what it said:
>
>> "[T]he Federal Rule of Civil
>> Procedure do not require a claimant
>> to set out in detail the facts upon
>> which he bases his claim.  To the
>> contrary, all the Rules require is 'a
>> short and plain statement of the
>> claim' that will give the defendant
>> fair notice of what the plaintiff's
>> claim is and the grounds upon
>> which it rests." *Id..,* at 47, 78 S.Ct.
>> at 103 (footnote omitted).

Rule 9(b) does impose a particularity requirement in two specific instances. It provided that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Thus, the Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging municipal liability under §1983. *Expressio unius est exclusio alerius.*

The phenomenon of litigation against municipal corporations based on claimed constitutional violations by their employees dates from our decision in ***Monell***, *supra*, where we for the first time construed § 1983 to allow such municipal liability. Perhaps if Rules 8 and 9 were rewritten today, claims against municipalities under § 1983 might be subjected to the added specificity requirement of Rule 9(b). But that is a result which must be obtained by the process of amending the Federal Rules, and not by judicial interpretation. In the absence of such an amendment, ***federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.***" (Emphasis supplied). *Id.* at 507 U.S. 168-69, 113 S.Ct. at 1163.

Notably, all but one of the cases Defendants cite in their memorandum for the heightened pleadings standard, pre-date ***Leatherman.*** The parties and the court apparently also were unaware of ***Leatherman*** in a 1996 Middle District of Pennsylvania case cited by Defendants, ***Labalokie v. Capital Area Intermediate Unit,*** 926 F. Supp. 503 (M.D. Pa. 1996). The ***Labalokie*** court relied on pre-1993 precedent in that case, which clearly was overruled by ***Leatherman***.[3] No reference was made in that case to ***Leatherman.***

---

[3] When citing *Rose v. Bartle,* 871 F.2d 331 (3d Cir. 1989) on page 8 of their memorandum in support of the heightened pleading requirement, Defendants also fail to note that *Rose* involved a RICO conspiracy claim, not a civil rights action.

18

Indeed, this Court recognized that the heightened pleading standard may not, post *Leatherman,* be applied to section 1983 claims.  See, *Piazza v. Major League Baseball,* 831 F. Supp. 420, 428 (E.D. Pa. 1993)(Padova, J.).  The Court should rebuke Defendants' attempt to have the Complaint dismissed based on "bad" case law.

B.    *PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THEIR CLAIMS AGAINST THE HAMMILLS*

In essence, the Amended Complaint alleges that the Hammills conspired with the Township Defendants to violate Plaintiffs' substantive due process rights to be free from arbitrary, capricious and bad faith governmental action.   Though Defendants have confidently rested on the obsolete particularity standard and not directly argued that the Plaintiffs do not meet the usual pleadings requirements, Plaintiffs nevertheless explain below how the Complaint meets those ordinary standards by which complaints are evaluated.

To establish this claim, Plaintiffs must show that the Hammill Defendants acted "under color of state law."  The inquiry of whether a private individual is a state actor is fact-specific.  *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 939, 102 S.Ct. 2744, 2754 (1982). Private individuals act under "color of law" when they are "jointly engaged with state officials in the prohibited act."  *United States v. Price,* 383 U.S. 787, 793, 86 S.Ct. 1152, 1156-57 (1966).  The *Price* Court observed, "To act 'under color' of law does not require that the accused be an officer of the State.  It is enough that he is a willful participant in joint activity with the State or its agents."  *Id.* at 383 U.S. 794, 86 S.Ct. 1157.  The court should "seek to ascertain 'the degree to which the state and the [private] entity exist in a 'symbiotic

relationship' or under circumstances where the conduct of the private actor can fairly be imputed as that of the state." ***Groman v. Township of Manalapan,*** 47 F.3d 628, 641 (3d Cir. 1995)(citations omitted).

It would be premature for the Court to dismiss Plaintiffs' claims against the Hammills without giving Plaintiffs the chance to prove a set of facts that would entitle them to relief. ***Township of South Fayette, supra,*** at 27 F.Supp.2d. 593. This Court has allowed other plaintiffs bringing similar claims to proceed to discovery, allowing them to gather evidence in support of their claims against private parties acting in conspiracy with governmental entities.

For example, in ***Piazza v. Major League Baseball, supra,*** at 831 F. Supp. 428, this Court denied a motion to dismiss for failure to state a claim, allowing potential investors in a professional baseball team to proceed with their suit against Major League Baseball ("Baseball") under section 1983 for a conspiracy to deprive the investors of their constitutional rights. The investors' efforts to purchase the San Francisco Giants baseball club and relocate it to Florida were thwarted by Baseball, acting in concert with the City of San Francisco. *Id.* at 831 F.Supp. 426. The investors claimed that Baseball acted under color of state law, given the symbiotic relationship with municipal entities and the help provided by the City of San Francisco to prevent the team from being relocated. Judge Padova stated:

> A private defendant's joint participation with a state official in
> a conspiracy to deprive another of constitutionally protected

20

rights constitutes both state action essential to show a direct violation of a plaintiff's rights and action "under color of state law" for purposes of § 1983. See *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 931, 102 S.Ct. 2744, 2750, 73 L.Ed.2d 482 (1982)(explaining *Adickes,* 398 U.S. 144, 90 S.Ct. 1598) (1982)." *Id.* at 427.

In that case, the investors/plaintiffs alleged that Baseball colluded with the City of San Francisco to keep the team there by, among other things, the City offering to indemnify Baseball with respect to the sale and the City's mayor pleading for Baseball to interfere with the sale. *Id.* at 428. This Court found that the investors had "gone far beyond merely providing Baseball with fair notice of their claim and the grounds upon which it rests" and the allegations were "more than adequate to create at least a reasonable inference" that Baseball and the City had an understanding to interfere with the investors' constitutional rights. *Id.*

Here, Plaintiffs have pled a similar "symbiotic relationship" between the Township and the Hammills. They share a common object of preventing the Plaintiffs from continuing to operate their business, just as the City and Baseball wanted to keep the team in San Francisco, and forcing Plaintiffs to purchase the Hammill property at an obscene profit, since the Township will not do so. The Complaint states:

> "53(d). The Township Defendants have conspired with the Hammill Defendants for political and other illegal reasons to enable the Hammills to obtain an obscene profit by forcing the Plaintiffs to purchase the Hammill property in exchange for dropping their opposition to the Plaintiffs' business. This came after the Township refused the Hammills' demand that the Township purchase the Hammill property at a hefty profit.

21

58.      Defendants John and Patricia Hammill intentionally and/or negligently, carelessly or grossly negligently violated Plaintiffs' constitutionally protected substantive due process rights by acting under color of state law in conspiracy with the other Defendants.  The Hammill Defendants had an express or implied agreement with state actors, *i.e.,* the Township Defendants, to use the Township's limitless governmental powers and processes to harass and intimidate the Plaintiffs into purchasing the Hammills' property at a significant profit, including penalty payments, to the Hammills, while reaping political and other rewards for the Township.

59.    The Hammills have acted together with and have obtained significant aid from Township officials, meeting with Township officials, intervening on behalf of the Township in the zoning board hearing, and using the Township's power as a weapon in support of their unlawful demand that Plaintiffs pay them an exorbitant amount of money plus a penalty payment as the price for the Plaintiffs' continued use of their property for business purposes.  These acts all go well beyond the typical rights of a neighboring landowner."  (C. ¶¶53(d), 58, 59).[4]

Defendants cannot feign ignorance of the claims.  Plaintiffs should be allowed to assemble evidence from all of the Defendants in support of these claims in discovery.

---

[4]    See also, *Skepton v. County of Bucks, Pennsylvania,* 628 F. Supp. 177 (E.D. Pa. 1986)(Luongo, J.).  There, the Court denied a private engineering firm's motion to dismiss a section 1983 suit against it by a government contractor.  The government contractor alleged that private engineering firm acted under color of state law where the firm was intimately involved in the administration of a county project and attended meetings related to the contractor's problems with the contract and the contractor's termination.  The court found that while the facts did not establish an agreement between the government and the contractor, there was enough in the complaint to show a conspiracy.  *Id.* at 179.   In our case, the Township and the Hammills (and their representatives) held meetings and discussions about the DelGuerico property, and the Hammills' complaints motivated the Township's Cease and Desist Order.  The Township and the Hammills jointly pressed forward to defend the Cease and Desist Order in the zoning hearing, though both parties were well aware that the Township knew, as would anyone who looked into the issue, that the Plaintiffs had the right to continue operating their business.  The parties' symbiotic actions are aimed at extracting from Plaintiffs a commitment to buy out the Hammills at a profit and allowing the Township another shot at the DelGuericos.

22

Defendants also cite to Pennsylvania state law cases on conspiracies. Even if these cases were relevant (which they are not), the cases do not apply to the factual circumstances of this case. Defendants argue that there is no conspiracy because the Hammills and the Township were merely independent players each "with the right to do a thing happening to do the thing at the same time." *Fife v. Great Atlantic & Pacific Tea Co., Inc.,* 52 A.2d 27 (Pa. 1947).[5] However, the Hammills' complaints (from 1998 forward), the Cease and Desist Order in June, 2001, the Hammills' control of the zoning appeal hearing (as evidenced by the record), the Hammills' extortionate demand and the course of harassment by government inspections are all not the unrelated events Defendants would have the Court believe. The Hammills and the Plaintiffs are acting jointly to deprive Plaintiffs of their rights.[6]

Plaintiffs pled, and are aware, that there were meetings and conversations between the Township and the Hammills and their representatives at which the purchase of the Hammills' house and the mutual desire to eliminate the Plaintiffs' business, notwithstanding the legal obstacles, were discussed and strategy agreed on. (C. ¶59). The dates and contents of the meetings will be revealed in discovery. All Defendants were aware that the Township already determined (several times) that the DelGuericos had a legal right to run their

_____

[5] It should be noted that in *Fife,* the court was addressing the sufficiency of evidence of conspiracy after a lengthy trial. The court was not throwing out a claim at a stage equivalent to the federal motion to dismiss.

[6] To maintain a conspiracy claim, there must be at least a tacit agreement between the co-conspirators to deprive the plaintiffs of their civil rights. Such an agreement may be inferred. *Santiago v. City of Philadelphia,* 435 F. Supp. 136, 156 (E.D. Pa. 1977)(Lord, J.). A conspiracy may be established by circumstantial evidence. *Hauptman v Wilentz,* 570 F. Supp. 351, 382 (D.N.J. 1983), *aff'd mem.,* 770 F.2d 1070 (3d Cir. 1985).

business on their Grouse Lane property.[7]

Defendants also argue that Plaintiffs lack a basis to allege that the Hammills are using the Township and its processes to extort a huge profit on their house.  (DM at 9-10).  The Hammill Defendants, of course, do not want the Court to focus on proof of the personal profit the Hammills are seeking through their collaborative efforts to shut the Plaintiffs business down.  If there were no connection between the Hammills and the Township's pursuit of a Cease and Desist Order, why would the DelGuericos pay the Hammills nearly $600,000 to buy the Hammills' property, which they bought just two years earlier for $315,000?  If Defendants were correct then the DelGuericos would still face the Township's proceedings to declare their business an illegal operation.  But Plaintiffs allege that the Township, in conspiracy with the Hammills, intended to do whatever the Hammills desired.

Finally, Defendants argue that the letter in which the Hammills' attorney, Gregory Emmons, demanded the huge payment is excluded by operation of Rule 408 of the Federal Rules of Evidence.[8]  Defendants are remiss since all well pled facts by Plaintiffs must be

---

[7]    This is not a case of neighbors merely providing information to the police, as the Defendants suggest on page 8-9 of their memorandum.  The Complaint alleges a good deal more than the Hammills simply expressed concern to the Township about the Plaintiffs' activities.  It is alleged  directly that the Hammills were not only direct participants in the conspiracy to violate Plaintiffs' rights, they orchestrated it in a blatant effort to use the government to line their own pockets.

[8]    That rule states in full:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, *is not admissible to prove*

24

deemed as true at this stage. That Defendants have a different view is not surprising but it is irrelevant at this time.

Contrary to Defendants' assertion, Rule 408 would not bar use by the Plaintiffs of the Hammill attorney's letter for several reasons. First, the Hammill letter was dated March 14, 2002, months after the Cease and Desist Order was issued. It was not a letter exchanged between the parties in this civil rights suit (which was filed in May, 2002), but was offered in the context of the separate zoning hearing board appeal. The letter is not being offered as evidence that the Hammills had a valid claim against the DelGuericos (who are the plaintiffs, *not the defendants,* in this action). See, *e.g., Towerridge, Inc. v. T.A.O., Inc.,* 111 F.3d 758, 770 (10th Cir. 1997)("Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated."). The demand letter is evidence of the separate wrong of the violation of the Plaintiffs' civil rights. See, *Carney v. The American University,* 151 F.3d 1090, 1095-96 (D.C. Cir. 1998)(The court admitted settlement correspondence to show that the university committed a wrong separate from discrimination by conditioning the plaintiff's benefits on a waiver of her rights).

---

*liability for or invalidity of the claim or its amount.* Evidence of conduct or statements made in compromise negotiations is likewise not admissible. *This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.* (Emphasis supplied).

Second, the letter is admissible because it is, in essence, a one-sided discussion with a demand. See, ***Winchester Packing, Inc. v. Mobil Chemical Co.,*** 14 F.3d 316, 319 (7th Cir. 1994)("But a bill that itemizes what the sender thinks the recipient owes him and demands – even under threat of legal action – payment is not an offer in settlement or a document in settlement negotiations and hence is not excludable by force of Rule 408."); ***Commonwealth Aluminum Corp. v. Stanley Metal Assoc***., 186 F.2d Supp. 770 (W.D. Ky. 2001)("[O]ne-sided discussions which contain admissions of fact along with settlement demands and threats of litigation are not protected. ***Ullmann v. Olwine, Connelly, Chase, O'Donnell & Weyher,*** 123 F.R.D. 237, 242 (S.D. Ohio 1987)."). The DelGuericos did not respond to this demand, which was excessive and outrageous.

Finally, the letter can be offered for the purpose of showing the intent of the Hammills to work hand-in-hand with the Township in the zoning hearing to make a huge profit (including a penalty payment to the Hammills). The letter is evidence of the Hammills' efforts, in conjunction with the Township, to deprive the Plaintiffs of their civil rights, which is akin to the examples offered in Rule 408 of other purposes for which offers of compromise are admissible, such as illegal acts during the course of settlement negotiations. See, ***United States v. J.R. LaPointe & Sons, Inc.,*** 950 F. Supp. 21, 23 (D. Me. 1996)("Rule 408 does not exclude use of compromise evidence when it is offered to prove something other than liability for, or invalidity of, a claim or its amount. 23 Charles A. Wright and Kenneth W. Graham, Jr., Federal Practice and Procedure, § 5310 (1980)"); ***Resolution Trust Corp. v.***

*Blasdell,* 154 F.R.D. 675, 681 (D. Ariz. 1993)(disputed evidence from meetings and discussions between the parties offered to show motive rather than prove liability is admissible under Rule 408); ***Scott v. Goodman,*** 961 F.Supp. 424, 438 (E.D.N.Y. 1997), *aff'd,* 191 F.3d 82 (2d Cir. 1999)(statements in settlement discussions admissible when they serve as the "very source and substance of a different and independent First Amendment cause of action").

## V.    CONCLUSION

The Court should not dismiss the case even if it "may appear on the face of the pleadings that a recovery is very remote and unlikely." ***Scheuer v. Krause***, *supra,* at 416 U.S. 236, 94 S.Ct. 1683, 1686.  If the Court deems the allegations of the Complaint insufficient, Plaintiffs should be given leave to amend and to take reasonable discovery to address the perceived insufficiencies.  See, ***Labalokie,*** *supra,* at 926 F. Supp. 508.

27

For all of the above reasons, Defendants' motion should be denied.

*Respectfully submitted,*

_____

**NEIL A. MORRIS**
**JULIE L. KITZE**
**Attorneys for Plaintiffs, Tony**
**and Leigh DelGuerico and**
**DelGuerico's Wrecking &**
**Salvage Inc.**

**OF COUNSEL:**

**NEIL A. MORRIS ASSOCIATES, P.C.**
**Mellon Bank Center**
**1735 Market Street, 43rd Floor**
**Philadelphia, PA 19103**
**Tel. (215) 751-0600**
**Fax (215) 751-1425**
**nmorris@namapc.com**

**Date:   August 26, 2002**

## CERTIFICATION OF SERVICE

**JULIE L. KITZE, Esquire,** hereby certifies that true and correct copies of *Plaintiffs' Response In Opposition To Motion To Dismiss Of Defendants John Hammill And Patricia Hammill Pursuant to Federal Rule of Civil Procedure 12(b)(6)* and *Brief In Support Thereof* were served upon the following, *Via* First Class Mail, Postage Prepaid, on August 26, 2002:

David M. Maselli, Esquire
Wright & O'Donnell
15 East Ridge Pike, Suite 570
Conshohocken, PA 19428

Attorney for Defendants Springfield
Township, Jeffrey Mease, Peter Lamana,
Rodney Wieder, James Hopkins, Robert
Zisko and Charles Halderman, Jr.

John M. Heley, Esquire
245 West Broad Street
P.O. Box 558
Quakertown, PA 18951

Attorney for Defendants John
Hammill and Patricia Hammill

_____

**JULIE L. KITZE**
**Attorney for Plaintiffs, Tony**
**DelGuerico, Leigh DelGuerico and**
**DelGuerico's Wrecking & Salvage,**
**Inc.**

**OF COUNSEL:**

**NEIL A. MORRIS ASSOCIATES, P.C.**
**Mellon Bank Center**
**1735 Market Street, 43rd Floor**
**Philadelphia, PA 19103**
**Tel. (215) 751-0600**
**Fax (215) 751-1425**

**Date: July 29, 2002**

29