*IN THE UNITED STATES COURT FOR*
*THE EASTERN DISTRICT OF PENNSYLVANIA*

*TONY DELGUERICO, et al.*                :        *CIVIL ACTION*

            *Plaintiffs*                 :        *No. 02-CV-3453*

    *v.*                                  :

*SPRINGFIELD TOWNSHIP, et al. :*

            *Defendants*                  :


*PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO*
*DISMISS OF DEFENDANTS SPRINGFIELD TOWNSHIP,*
*JEFFREY MEASE, PETER LAMANA, RODNEY WIEDER,*
*JAMES HOPKINS, ROBERT ZISKO AND CHARLES HALDERMAN, JR.*

*and*

*BRIEF IN SUPPORT THEREOF*


                                    *NEIL A. MORRIS*
                                    *JULIE L. KITZE*
                                    *Attorneys for Plaintiffs,*
                                    *Tony DelGuerico, Leigh*
                                    *DelGuerico and DelGuerico's*
                                    *Wrecking & Salvage, Inc.*

*OF COUNSEL:*

*NEIL A. MORRIS ASSOCIATES, P.C.*
*Mellon Bank Center*
*1735 Market Street, 43rd Floor*
*Pennsylvania 19103*
*Tel. (215) 751-0600*
*Fax (215) 751-1425*
*nmorris@namapc.com*

*DATE: September 5, 2002*

*IN THE UNITED STATES COURT FOR*
*THE EASTERN DISTRICT OF PENNSYLVANIA*

*TONY DELGUERICO, et al.*      :      *CIVIL ACTION*

     *Plaintiffs*      :      *No. 02-CV-3453*

     *v.*      :

*SPRINGFIELD TOWNSHIP, et al.* : 

     *Defendants*      :

*ORDER*

     *AND NOW,* this      day of      , 2002, upon consideration of the

*Motion To Dismiss Of Defendants Springfield Township, Jeffrey Mease, Peter Lamana,*

*Rodney Wieder, James Hopkins, Robert Zisko and Charles Halderman, Jr.* and Plaintiffs'

Response in opposition thereto, it is hereby **ORDERED** and **DECREED** that Defendants'

Motion is **DENIED**.

     *BY THE COURT*:

     _____

     *JOHN R. PADOVA*      *J.*

2

*IN THE UNITED STATES COURT FOR*
*THE EASTERN DISTRICT OF PENNSYLVANIA*

| | | |
|---|---|---|
| *TONY DELGUERICO, et al.* | : | *CIVIL ACTION* |
| *Plaintiffs* | : | *No. 02-CV-3453* |
| *v.* | : | |
| *SPRINGFIELD TOWNSHIP, et al.* | : | |
| *Defendants* | : | |

*PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO*
*DISMISS OF DEFENDANTS SPRINGFIELD TOWNSHIP,*
*JEFFREY MEASE, PETER LAMANA, RODNEY WIEDER, JAMES*
*HOPKINS, ROBERT ZISKO AND CHARLES HALDERMAN, JR.*

*AND NOW*, Plaintiffs, by their attorneys, Neil A. Morris Associates, P.C., hereby file

this response opposing the motion to dismiss filed by Defendants Springfield Township,

Jeffrey Mease, Peter Lamana, Rodney Wieder, James Hopkins, Robert Zisko and Charles

Halderman, Jr.:

1.   Admitted.

2.   Admitted.

3.   Admitted.

4.   Admitted.

5.   Admitted.

6.   Admitted.  By way of further answer, the Complaint alleges that the only

pleading filed in the case was the Complaint.  (C. ¶21).  The clear implication of this is that

the Township abandoned the case.  The April 1, 1997 letter of the current Springfield

Township's Solicitor, James McNamara, attached to the Complaint as Exhibit "C", states that the Township took no further action on the case after filing the Complaint. The Defendants fail to refer to Solicitor McNamara's letter, which relies on the fact that the Township took no further action on the case as a basis for his conclusion that the Plaintiffs had a vested right to use their property for a recycling business.

7.    Admitted. By way of further answer, the Township Defendants fail to acknowledge that, as a result of that Complaint, in 1997 the Township sought a legal opinion from Township Solicitor James McNamara as to the legality of Plaintiffs' business. In that legal opinion (which the Township Defendants now overlook), Solicitor McNamara concluded that the Plaintiffs had a legal right to operate a recycling business on their property. (C., Ex. "C"). In that letter, Solicitor McNamara opined that the Township would have no basis for issuing a Cease and Desist Order to the Plaintiffs and that such a Cease and Desist Order would be reversed on appeal.

8.    Admitted.

9.    Admitted. By way of further answer, Plaintiffs noted that this Cease and Desist Order was motivated by the DelGuerico's neighbors, Defendants John and Patricia Hammill, who were acting in conspiracy with the Township to harass the Plaintiffs, close down their business and force the Plaintiffs to purchase the Hammills' property for an enormous profit and penalty payment, including attorneys fees.

10.    Admitted. The Cease and Desist Order, which is attached to the Complaint

2

as Exhibit "E,"  speaks for itself.

11.     Admitted.   The Cease and Desist Order, which is attached to the Complaint as Exhibit "E," speaks for itself.

12.     Admitted.  The appeal, which is attached to the Complaint as Exhibit "F," speaks for itself.

13.     Admitted.

14.     Admitted.

15.     Admitted.  The waiver speaks for itself.

16.     Admitted.   By way of further answer, Plaintiffs state that they offered to put on testimony of witnesses out of order to continue the proceeding but the Zoning Hearing Board rejected this offer.

17.     Denied.  The Plaintiffs are entitled to turn to the federal court **now** (not after the zoning board has reached its decision on Plaintiffs' appeal) to stop the abuse of governmental power against them by the Defendants.  This is the **third** time the Township Defendants have attempted to interfere with the Plaintiffs' rights for the same alleged reasons, reasons the Defendants are aware are not valid.  See *e.g.*, ***Blanche Road Corporation v. Bensalem Township,*** 57 F.3d 253, 267-68 (3d Cir. 1995); ***Thornbury Noble, Ltd. v. Thornbury Township,*** 2002 WL 442827 (E.D. Pa.)(O'Neill, J.)(copy attached as Exhibit "A").  Those cases stand for the proposition that actions in which plaintiffs allege that governmental defendants have interfered with or abused the processes for land use

determinations are "substantively different" from other ripeness cases, and, therefore, plaintiffs do not have to wait for final governmental determinations of land use issues before filing civil rights lawsuits in federal court.

18.    Denied.    Defendants offer no reasons for their assertion that Plaintiffs' remaining claims should be dismissed so it is impossible to respond specifically to this allegation.

19.    Denied as stated.    It is admitted that it was not strictly necessary for the Plaintiffs to name the individual Township Defendants in their official capacities when the Township was named as a Defendant, it does not mean that the claims against the individual Defendants in their official capacity must be dismissed.  See *e.g., **Dieterly v. Sorrenti, 1992** WL 310302, *3, n.3 (E.D.Pa.)(Bechtle,C.J.)(a copy of this opinion is attached as Exhibit "E").

20.    Admitted.

In answer to the prayer for relief, Plaintiffs assert that it would be improper to dismiss the Plaintiffs' Complaint with prejudice if the basis for the dismissal is lack of ripeness of the matter for adjudication.  Any dismissal of the federal claim should be without prejudice, and dismissal of pendent state law claims should be without prejudice of Plaintiffs' rights to refile those claims in state court.  See, *e.g*., **ABC Bail Bonds, Inc. v. Perkin,** 2002 WL 1739551, *4 (E.D. Pa.)(Yohn, J.)(The court dismissed a claim that was not ripe for review without prejudice)(a copy of this case is attached as Exhibit "D").

4

*WHEREFORE,* Plaintiffs request that the Court deny the Township Defendants'
motion to dismiss the Complaint.

*Respectfully submitted,*

_____

*NEIL A. MORRIS*
*JULIE L. KITZE*
*Attorneys for Plaintiffs, Tony*
*and Leigh DelGuerico and*
*DelGuerico's Wrecking &*
*Salvage Inc.*

*OF COUNSEL:*

*NEIL A. MORRIS ASSOCIATES, P.C.*
*Mellon Bank Center*
*1735 Market Street, 43rd Floor*
*Philadelphia, PA 19103*
*Tel. (215) 751-0600*
*Fax (215) 751-1425*
*nmorris@namapc.com*

*Date:  September 5, 2002*

5

*IN THE UNITED STATES COURT FOR*
*THE EASTERN DISTRICT OF PENNSYLVANIA*

| | | |
|---|---|---|
| *TONY DELGUERICO, et al.* | : | *CIVIL ACTION* |
| *Plaintiffs* | : | *No. 02-CV-3453* |
| *v.* | : | |
| *SPRINGFIELD TOWNSHIP, et al.* : | | |
| *Defendants* | : | |

*BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE IN*
*OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS*
*SPRINGFIELD TOWNSHIP, JEFFREY MEASE, PETER*
*LAMANA, RODNEY WIEDER, JAMES HOPKINS, ROBERT*
*ZISKO AND CHARLES HALDERMAN, JR.*

*NEIL A. MORRIS*
*JULIE L. KITZE*
*Attorneys for Plaintiffs,*
*Tony DelGuerico, Leigh*
*DelGuerico and DelGuerico's*
*Wrecking & Salvage, Inc.*

*OF COUNSEL:*

*NEIL A. MORRIS ASSOCIATES, P.C.*
*Mellon Bank Center*
*1735 Market Street, 43rd Floor*
*Pennsylvania 19103*
*Tel. (215) 751-0600*
*Fax (215) 751-1425*
*nmorris@namapc.com*

*DATE: September 5, 2002*

6

*TABLE OF CONTENTS*

**I.    INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**II.    STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**III.    STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**IV.    ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    *A.    PLAINTIFFS HAVE PLED RIPE SUBSTANTIVE
        DUE PROCESS CLAIMS SUFFICIENT TO
        WITHSTAND THE TOWNSHIP DEFENDANTS'
        MOTION TO DISMISS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        *1.    The Complaint Alleges A Viable Substantive
            Due Process Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        *2.    Plaintiffs' Substantive Due Process Claim Is
            Ripe For Adjudication* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        *3.    The Complaint States A Claim For Harassment
            Distinct From The Cease And Desist Order, Which
            The Zoning Hearing Result Will Not Affect* . . . . . . . . . . . . . . . . . . . . 25

    *B.    IT IS UNNECESSARY FOR THE COURT TO
        DISMISS THE CLAIMS AGAINST THE INDIVIDUAL
        TOWNSHIP DEFENDANTS IN THEIR OFFICIAL CAPACITY* . . . . . . . . . . . 26

**V.    CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## I.    INTRODUCTION

The Township Defendants'[1] motion to dismiss and memorandum of law attempt to obscure the basic federal claim Plaintiffs Tony and Leigh DelGuerico and DelGuerico's Wrecking & Salvage, Inc. ("Plaintiffs") have pled in their Complaint.  That claim is for deprivation of substantive due process rights by the Township Defendants' arbitrary, capricious and bad faith actions individually and in conspiracy with the Hammill Defendants.  This is not the run-of-the mill zoning dispute presented by the Township Defendants in their memorandum.  Defendants have selectively omitted crucial facts and allegations of the Complaint, which once recognized, require the rejection of the motion.

The Township Defendants' arbitrary, capricious and bad faith action is premised upon Defendants' third action to close Plaintiffs' business even though Defendants knew all too well, as confirmed by their Township Solicitor in 1997, that there is no valid basis to do so.  Plaintiffs have sued now rather than wait for the fourth or fifth or sixth or seventh action to be pursued.  Enough already.

Plaintiffs have alleged that most recently a Cease and Desist Order was filed against Tony and Leigh DelGuerico to close their business, although the Township's own Solicitor issued an opinion letter in 1997 (which was released to the public) concluding that the DelGuericos had vested rights to operate that business (since the 1980s) on their

---

[1] Defendants Springfield Township, Jeffrey Mease, Peter Lamana, Rodney Wieder, James Hopkins, Robert Zisko and Charles Halderman, Jr.  are referred to collectively as the "Township Defendants."

Riegelsville property. The Township Defendants have pursued the Cease and Desist Order in spite of their own legal determination, as well as harassed the DelGuericos by sending a stream of inspectors to the property. (The Defendants' memorandum fails to mention the latter, distinct allegation).

According to the Complaint, the Township Defendants have also acted in conspiracy with the DelGuericos' neighbors, the Hammills, who are using the Township's powers to try to extort the DelGuericos into a purchase of the Hammill property at a huge, unwarranted profit, plus a penalty payment and attorneys fees. Tellingly, in their motion package, the Township Defendants do not refer even once to the Hammills or Plaintiffs' allegations that the Township is acting in conspiracy with the Hammill Defendants. Those facts do not fit into the Township Defendants' portrayal of this case as a simple, straightforward zoning matter that must run its course.[2]

Plaintiffs' substantive due process claim is ripe, contrary to the Township Defendants' assertion, which is based improperly on Defendants' skewed recitation of the facts pled. Important facts alleged by Plaintiffs include but are not limited to: (1) the Township Defendants have instituted zoning inquiries/proceedings against the DelGuerico businesses three times, twice before abandoning such proceedings; (2) for years, the Township has done business with, benefitted from and issued business licenses to, the DelGuericos to conduct the very business the Township seeks to close, again,

_____

[2] "There is nothing more horrible than the murder of a beautiful theory by a brutal gang of facts." La Rochefoucauld.

9

including the operating of a recycling facility on the DelGuerico property; suddenly and

inexplicably in  2001 Plaintiffs were engaged in illegal activities; (3) the Township issued

a legal opinion that the business does not violate Township laws/ordinances and dropped

the second zoning investigation in 1997; (4) various Township Defendants made

statements (including on videotape) that the business is "grandfathered" for the purposes

of zoning laws; (5) the Township Defendants have pursued the current proceeding on

behalf of the Hammills because it presented an opportunity to illegally harass and break

the Plaintiffs whatever the ultimate outcome; and (6) the Township Defendants have sent

a stream of inspectors to pore over the DelGuerico property (finding nothing but

upsetting and disturbing the DelGuericos in the process) to further harass the

DelGuericos.  These facts distinguish this action from the run of the mill zoning dispute

in which the courts may require plaintiffs to await the outcome of zoning appeal hearings

before bringing suit.  Indeed, we were unable to find any case where a municipality had

pursued a business three times for the same alleged violations.        The Plaintiffs are

entitled to turn to the federal court *now* (not after the Zoning Hearing Board has ruled on

the appeal) to stop the abuse of governmental power against them by the Defendants.

See *e.g.*, **Blanche Road Corporation v. Bensalem Township,** 57 F.3d 253, 267-68 (3d Cir.

1995); **Thornbury Noble, Ltd. v. Thornbury Township,** 2002 WL 442827 (E.D.

Pa.)(O'Neill, J.)(a copy of this opinion is attached hereto as Exhibit "A").  Those cases

stand for the proposition that actions asserting governments have interfered with or

abused the processes for land use determinations are "substantively different" from other ripeness cases, and, therefore, plaintiffs do not have to wait for final governmental determinations before filing federal civil rights suits.

In their memorandum, the Township Defendants *fail to once mention* a centerpiece of Plaintiffs' case -- the April 1, 1997 letter to the Springfield Township Board of Supervisors from Township Solicitor James M. McNamara, attached as Exhibit "C" to the Complaint (which is attached to Defendants' Motion as Exhibit "A").  In the letter, Solicitor McNamara (who still serves as the Township's Solicitor) offers his legal opinion that the DelGuericos enjoy vested rights to the use of their property as a recycling facility because:

> "the closing of the 1990 investigation without action, as well as the *Township's own use* of the disposal service, makes an overwhelming case for the establishment of a '*vested right' to use the property as a recycling center."*  (emphasis supplied)(Complaint, hereafter "C. __", Ex. "C").

McNamara concluded that the Township would have an "unlikely chance of success" in upholding a Cease and Desist Order against the DelGuericos and their business in the courts.  (*Id.* at 3).  In light of this official Township opinion, which has been publically distributed and accepted by *all* of the Township Defendants, it is arbitrary, capricious and bad faith harassment for the Township Defendants to try to close down the DelGuericos' business through a Cease and Desist Order for a third time in eleven years.  This is not a legitimate zoning proceeding the outcome of which the

11

Plaintiffs should be forced to await before pursuing relief in federal court.  The Plaintiffs have been harmed, financially and personally, by the fact that this zoning action has been brought *at all* in bad faith against them.[3]  The motion to dismiss should be denied.

## II.    STATEMENT OF FACTS

Plaintiffs initiated this action to contest the arbitrary, capricious and abusive use of power by the Township Defendants acting in conjunction with the DelGuerico's neighbors, the Hammills, to illegally close down the Plaintiffs' waste hauling, salvage and recycling business that has been operating continuously on the DelGuerico property since the 1960s.  Plaintiffs allege all Defendants were aware of Plaintiffs' property rights, yet for arbitrary reasons they have conspired to violate those rights.  Rarely are civil rights violations so blatant.

Plaintiff Tony DelGuerico is the President and a majority shareholder of Plaintiff DelGuerico's Wrecking and Salvage, Inc.  (C. ¶1).  Plaintiff Leigh DelGuerico is Tony DelGuerico's spouse.  (C. ¶2).  Since the early 1980s, Tony and Leigh DelGuerico have continuously operated a business on their property at 2895 Grouse Lane, Riegelsville, Springfield Township, Bucks County, Pennsylvania.  (C. ¶16).  They took over the

---

[3]    Defendants' three-page argument on takings claims under the Fifth Amendment to the United States Constitution is irrelevant. See Township Defendants' Memo. at 7-10.  Plaintiffs did not plead a takings claim.  It is difficult to understand why the Defendants think the Complaint contains a taking argument since the Fifth Amendment is not cited once the Complaint, nor is the word "takings" used.  Apparently this is a case of Defendants setting up a straw issue to knock it down since they are unable to attack the actual claims pled by Plaintiffs and the McNamara letter.

business from Tony's father, who started in the salvage and waste removal business on the property in the 1960s. (C. ¶13). The Plaintiffs' business has consisted of a waste hauling, salvage and recycling operation, including storage of recyclable metals and scrap metal on the property until it is shipped to another location. (C. ¶¶13, 16).

It is an undisputed fact, as alleged in the Complaint, that Defendant Springfield Township has engaged in a multi-year, mutual business relationship with the Plaintiffs. The Complaint alleges that the Township "expressly allowed, permitted and willingly participated in Plaintiffs' business and benefited therefrom." (C. ¶25). In turn, Plaintiffs reasonably relied on the Township's decision to let them continue and expand their business. (*Id.*). Among other things, the Township entered into a Recycling Agreement whereby **the Township recycling program operated on Plaintiff's property,** and the Township issued **annual waste-hauling licenses** to the DelGuerico's business, then called DelGuerico's Disposal Service, Inc. (C.¶¶22-25). In his April 1, 1997 letter, Township Solicitor McNamara notes the Township's "use of the service offered by the landowner which would be used as evidence that the Township approved of the use and the failure to enforce the Cease and Desist Order in the past." (C., Ex. "C", at 3).

From time to time over the years, as suburban sprawl reached into the countryside, new unobservant homebuyers would later realize that Plaintiffs' business was in the area and then complain to the Township. Upon receiving complaints, the Township would act to appease neighbors by taking zoning action against the Plaintiffs' business, though the

13

business was operating legally, a fact of which the Township was painfully aware; its own solicitor had determined this.  (C. ¶26).

Prior to 1990, the Township Defendants, to the DelGuericos' knowledge, did not assert their business was illegal.  (C. ¶17).  In 1990, neighbors complained to the Township which then, in a "knee jerk" response, issued a Cease and Desist Order against the DelGuericos and filed a complaint in the Bucks County Court of Common Pleas to: (1) enjoin the DelGuericos from using their land as a solid waste and junk disposal site; and (2) declare the disposal activity to be a public nuisance.  (C. ¶20).  The Township eventually abandoned its legal action, since it was baseless and was intended to have the DelGuericos make a few minor "clean up" type changes.  (C. ¶21).[4]

A second neighbor complaint in 1997 prompted the Township to again examine the legality of the DelGuericos' business.  (C. ¶¶ 27-28).  Township Solicitor McNamara concluded that there was an "overwhelming case" that the DelGuericos had a "vested right" to use the property as a recycling facility and that the DelGuericos would prevail if they appealed a Cease and Desist Order.  (C. ¶29).  Solicitor McNamara's April 1, 1997 opinion letter was released to the public.  (C. ¶30).  McNamara continues as the Township Solicitor today.  We must posit, rhetorically, what changed to lead the

---

[4] The Township Defendants disingenuously assert that the "Complaint does not allege the outcome of the suit."  Defendants know full well the outcome was.  After filing one pleading (a complaint) the Township dropped the case.  McNamara's April 1, 1997 letter relies on the fact that this matter "was closed without action in late 1990 or 1991" as a fact supporting Plaintiffs' vested rights to use the property as a recycling facility.  (C., Ex. "C").

14

Township Defendants, in 2001, to reassert a zoning challenge to Plaintiffs' use of their property?  Nothing whatsoever.

In 1998, Defendants John and Patricia Hammill moved to 2845 Grouse Lane.  (C. ¶44).  The Township Defendants pretend that the Hammills are not part of this action. Apparently the Hammills claim that they somehow did not notice Plaintiffs' business on the adjacent property before purchasing their property, though their realtor did business with the DelGuericos and the Plaintiffs' large trucks with conspicuous lettering on the sides drove past the Hammills when they were looking at the property.  The Hammills claim that even after being next door to Plaintiffs' business for months, they did not notice the large refuse trucks and other large vehicles using the Plaintiffs' driveway. Oblivious to Plaintiffs' business, the Hammills allegedly invested money into home improvements only to later "discover" Plaintiffs' business next door.  Upon this discovery, the Hammills wanted to move but were concerned that they would get a better price for the sale of their home if the Plaintiffs' business was gone.[5]  When Defendants learned of the business they became concerned about the value of their property and set out to force Plaintiffs to purchase the property at a hefty profit under the pretext of the Hammills using the Township Defendants to threaten to close Plaintiffs' business down. The Plaintiffs maintain that there would have been no governmental action against them

_____

[5] As an aside, the Hammills' contentions in their motion to dismissm, of trash trucks driving on Sunday and of odors emanating from the DelGuericos' property, are untrue.  Metal does not typically smell.

15

without the arbitrary and capricious actions of the Township and the Hammills.

After the Hammills first tried to get the Township to buy the property without success, the Hammills went after the DelGuericos, with the Township Defendants' assistance. The Township officials, having terminated their recycling contract with the Plaintiffs, realizing that they had no basis to challenge the Plaintiffs' business, saw the Hammills' willingness to object and proceed as another opportunity to bring an action against Plaintiffs (the sham that it is) in the hope of, not winning under the law but rather using their governmental power to crush Plaintiffs financially and emotionally into giving up. (C. ¶38).

On June 6, 2001, the Defendant Township Code Enforcement Officer Jeffrey Mease issued a Cease and Desist Order against the DelGuericos. (C. ¶35, Ex. "E"). This Order required the entire shutdown of Plaintiffs' business.[6] (*Id.* at ¶36). This was the third time in eleven (11) years that the Township Defendants tried to put the Plaintiffs out of business for the same bogus reasons. This Order came a few months after Defendants Wieder and Lamana approached the DelGuericos about renewing the Recycling Agreement between Plaintiffs and the Township. (C. ¶32).

What made this third time all the more egregious and blatant was McNamara's 1997 letter explaining the Township's position lacked merit. (C., Ex. "C"). Also making it egregious was the number of times Defendants told the Plaintiffs that their business

---

[6] The Township did not care that this business was the sole livelihood for the Plaintiffs and their seven (7) children.

16

was grandfathered and protected as vested rights.  (C. ¶35).   The Nuisance Ordinance cited in the Cease and Desist Order included, within the definition of refuse that could not be brought to the property, recyclable material that Plaintiffs always had stored on their property for years at the Township's request *as the Township's official recycler!*  (*Id.* at ¶37).

The Complaint states:

> "38.    Issuance of the Cease and Desist Order was motivated by the other Defendants, including neighbors the Hammill Defendants, who bought a house on Grouse Lane in 1998. This Order was without any  basis in fact or law, since the Township twice before recognized the Plaintiffs' right to operate a recycling and solid waste disposal business.  The Township Defendants acted on a purely political desire to appease the Hammill Defendants, who were attempting to use Township procedures to extract a huge profit from Plaintiffs for the Hammill property.  This came after the Township refused the Hammill Defendants'  request to purchase the Hammill property at a hefty profit for the Hammills.  The Township Defendants at all times were aware of the illicit objectives of the Hammills.

> 39.    At a meeting between Plaintiffs, the Hammill Defendants, their attorney, Greg B. Emmons of Fox, Rothschild, O'Brien & Frankel and the Township Solicitor after the Cease and Desist Order was issued, it became obvious quickly that the Township, pushed by the Hammills, intended to close down the Plaintiffs' business."  (C. ¶¶38-39).

The Plaintiffs appealed the Cease and Desist Order to the Township's Zoning Hearing Board.  That appeal is pending.  Tony DelGuerico could not testify at the most recent hearing because of a detached retina (a condition exacerbated by Defendants'

17

actions) which has been treated by extensive, complex surgery.  (C. ¶¶40-42).  Plaintiffs'

counsel in that proceeding offered to put witnesses on out of order (a common practice in

administrative proceedings) but that was not acceptable to the Zoning Hearing Board.

(Defendant's Motion, Exhibit "D" at 3-5).

The Hammills have intervened in the DelGuericos' appeal of the Cease and Desist

Order to represent the joint interests of the Township and the Hammills in ridding the

Township of the Plaintiffs. (C. ¶¶43-44).[7]  Additionally, the Hammills, in conjunction

with the Township, are trying to force the Plaintiffs to purchase the Hammills' property

for $582,000, a shockingly higher amount than the $315,000 for which they purchased

the property in 1998.  This figure includes a penalty payment to the Hammills purchasing

a property on a street that obviously included Plaintiffs' business, plus their attorneys

fees.  (C. ¶44).

Based on the above facts, Plaintiffs have sued all Defendants for violating

Plaintiffs' substantive due process rights to be free from arbitrary, capricious, bad faith

and irrational actions by the Township and its officials.  Count I alleges, in relevant part:

> "53(d). The Township Defendants have conspired with the
> Hammill Defendants for political and other illegal reasons to
> enable the Hammills to obtain an obscene  profit by forcing
> the Plaintiffs to purchase the Hammill property in exchange
> for dropping their opposition to the Plaintiffs' business.  This
> came after the Township refused the Hammills' demand that
> the Township purchase the Hammill property at a hefty profit.

---

[7] Plaintiffs have not sought to stay or postpone the zoning hearing.  Plaintiffs' claims are
premised on substantive, not procedural, due process.

58.    Defendants John and Patricia Hammill intentionally and/or negligently, carelessly or grossly negligently violated Plaintiffs' constitutionally protected substantive due process rights by acting under color of state law in conspiracy with the other Defendants.  The Hammill Defendants had an express or implied agreement with state actors, *i.e.,* the Township Defendants, to use the Township's limitless governmental powers and processes to harass and intimidate the Plaintiffs into purchasing the Hammills' property at a significant profit, including penalty payments, to the Hammills, while reaping political and other rewards for the Township.

59.    The Hammills have acted together with and have obtained significant aid from Township officials, meeting with Township officials, intervening on behalf of the Township in the zoning board hearing, and using the Township's power as a weapon in support of their unlawful demand that Plaintiffs pay them an exorbitant amount of money plus a penalty payment as the price for the Plaintiffs' continued use of their property for business purposes.  These acts all go well beyond the typical rights of a neighboring landowner."  (C. ¶¶53(d), 58, 59).

In addition to the Cease and Desist Order, the Township Defendants harassed the Plaintiffs by sending a stream of inspectors to the property.  On or about August 8, 2001, the Township filed a bogus complaint with the Pennsylvania Department of Environmental Protection, which inspected the property and found it in good condition. (C. ¶41).  The Township even used its state power to create a new Environmental Advisory Council, on which Defendant Supervisor Hopkins sits, as another vehicle to file complaints against the Plaintiffs and send investigators to their property to harass and intimidate them into giving up.  *Id.*  The DelGuericos have been harassed and humiliated

19

by the numerous calls and visits from various entities prompted by the Township

Defendants' complaints.

### III.    STANDARD OF REVIEW

Given the "notice pleading" requirements of the Federal Rules of Civil Procedure,

a party seeking to dismiss a complaint, pursuant to Rule 12(b)(6), F.R.C.P., faces an

substantial burden.  A complaint provides the defendant with "fair notice of what

plaintiff's claim is and the grounds upon which it rests."  **Conley v. Gibson,** 355 U.S. 41,

47, 78 S.Ct. 99, 103 (1957).  Pleadings must contain only a "short and plain statement of

the claim showing that the pleader is entitled to relief."  F.R.C. P. 8(a)(2); **Piazza v. Major**

**League Baseball,** 831 F. Supp. 420, 428 (E.D. Pa. 1993)(Padova, J.).

"Dismissal of a complaint is proper **only** where it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to

relief." **Township of South Fayette v. Allegheny Housing Auth.,** 27 F.Supp.2d 582, 593

(W.D.Pa. 1998), *aff'd,* 185 F.3d 863 (3d Cir. 1999); **ALA, Inc. v. CCAIR, Inc.,** 29 F.3d

855, 859 (3d Cir. 1994).  The court's task when reviewing a complaint pursuant to a

motion to dismiss is "a limited one":

> "The issue is not whether a plaintiff will ultimately prevail
> but whether the claimant is entitled to offer evidence in
> support of the claims.  Indeed it may appear on the face of the
> pleadings that a recovery is very remote and unlikely but that
> is not the test." **Scheuer v. Rhodes,** 416 U.S. 232, 236, 94
> S.Ct. 1683, 1686 (1974).

The Third Circuit in *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989)

instructs:

> "The applicable standard of review requires the court to
> accept as true all allegations in the complaint and all
> reasonable inferences that can be drawn therefrom, and view
> them in the light most favorable to the non-moving party."

Moreover, as this Court stated when denying a motion to dismiss on the very type

of substantive due process claim alleged in this Complaint:

> "The issue in *Bello* and *Woodwind Estates* was whether the
> plaintiffs had amassed sufficient evidence from which a
> reasonable jury could find improper motives. Here, on a
> motion to dismiss, plaintiff has a lesser burden. It need only
> allege facts which if proved would be sufficient to support a
> finding of improper motive." *Thornbury Noble, Ltd. v.
> Thornbury Township,* 2000 WL 1358483, at 2-3 (E.D. Pa.
> 2000)(O'Neill, J.)(a copy of this opinion is attached hereto as
> Exhibit "B").[8]

## IV.    ARGUMENT

### A.    *PLAINTIFFS HAVE PLED RIPE SUBSTANTIVE DUE PROCESS CLAIMS SUFFICIENT TO WITHSTAND THE TOWNSHIP DEFENDANTS' MOTION TO DISMISS*

#### 1.    *The Complaint Alleges A Viable Substantive Due Process Claim*

To proceed on a section 1983 claim, a plaintiff must establish that: (1) the conduct

complained of was committed by persons acting under color of state law; and (2) the

conduct deprived the plaintiff of rights secured under the Constitution or federal law. See

*e.g.*, *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55 (1988).   Where a plaintiff

---

[8]  See *Bello v. Walker*, 840 F.2d 1124, 1129-30 (3d Cir. 19*88), cert. den.,* 488 U.S. 851 (1988); *Woodwind Estates Ltd. v. W.J. Gretkowski,* 205 F.3d 118, 125 (3d Cir. 2000).

asserts a substantive due process claim, he or she must show that arbitrary or capricious action deprived him or her of a protected property interest.  Governmental action motivated by bias, bad faith or improper motive, constituting deliberate and arbitrary abuse of authority, violates substantive due process.  *Independent Enterprises Inc. v. Pittsburgh Water & Sewer Auth.,* 103 F.3d 1165, 1179 (3d Cir. 1997); *Bello v. Walker*, 840 F.2d 1124, 1129-30 (3d Cir. 1988).

On a motion to dismiss, the  plaintiff need not amass enough evidence for a jury to infer improper motives, but has the "lesser burden" of "alleg[ing] facts which if proved would be sufficient to support a finding of improper motive."  *Thornbury Noble, Ltd. v. Thornbury Township,* 2000 WL 1358483 (E.D. Pa. 2000)(O'Neill, J.)(Exhibit "B" hereto). The Township Defendants have not yet attacked the sufficiency of the Plaintiffs' substantive due process claim, relying instead on the ripeness argument.  Therefore, the Plaintiffs will address the elements of the claim only briefly.

Plaintiffs clearly satisfy the first requirement of a substantive due process claim – that Plaintiffs have a protected property interest in using their property.  Governmental decisions (such as the instant Cease and Desist Proceeding and the campaign of sending inspectors out to the property for various pretextual reasons) are aimed at interfering and regulating a "landowner's use and enjoyment of property" and thus affect a protected property interest in ownership.  See *e.g., Independent Enterprises, Inc., supra,* at 103 F.3d 1179, n.2; *Bello, supra, at*  840 F.2d 1129; *Thornbury Noble v. Thornbury Township,* 2002

WL 442827 (E.D. Pa. 2002)(O'Neill, J.)(Exhibit "A"); ***Blanche Road Corporation v. Bensalem Township,*** 57 F.3d 253, 268, n. 15 (3d Cir.), *reh'g en banc den.*, *cert. den.,* 516 U.S. 915 (1995)(The Court held that the plaintiffs/developer "had the right to be free from harassment in their land development efforts").

Plaintiffs' claim also meets the other requirement of substantive due process claims -- that the governmental unit improperly interfered with the process for land use determinations for reasons that were "arbitrary, irrational or tainted by improper motive." *Bello*, *supra,* at 840 F.2d 1129-30; see also, ***Woodwind Estates Ltd. v. W.J. Gretkowski,*** 205 F.3d 118, 125 (3d Cir. 2000); ***Thornbury Noble,*** *supra,* at 2002 WL 442827, *8 (Exhibit "A").

For example, in ***Bello,*** the plaintiffs alleged that municipal officials improperly denied building permits for partisan political or personal reasons unrelated to the merits of the applications.  The defendants (like the Township Defendants here) presented arguably rational reasons why the permits were denied.  The Third Circuit held that the factfinder had to resolve this factual dispute:

> "We need not define, at this juncture, the outer limits of the showing necessary to demonstrate that a governmental action was arbitrary, irrational, or tainted by improper motive.  ***The plaintiffs in this case presented evidence from which a fact finder could reasonably conclude that certain council members, acting in their capacity as officers of the municipality improperly interfered with the process by which the municipality issued building permits, and that they did so for partisan political or personal reasons unrelated to the merits of the application for the permits.***  These actions can have no relationship to any legitimate governmental objective, and, if proven, are

23

sufficient to establish a substantive due process violation
actionable under section 1983.  While the defendants claim
that the building permit was denied because of the plaintiff's
failure to build in numerical sequence, thus  permitting an
arguable rational ground for the denial of the permit, it is the
factfinder's role to resolve this factual dispute." (emphasis
supplied), *Id.* at 840 F.2d 1129-20.[9]

The Plaintiffs allege that the Township Defendants have acted in an arbitrary,

capricious and bad faith manner.  For personal and political reasons, the Township

Defendants have  (1) issued  a Cease and Desist Order; and (2) harassed the DelGuericos

by sending a stream of inspectors out to the property for nonexistent problems.  (C. ¶¶38-

39;  41, 53, 55, 58-59).  The Cease and Desist Order is blatantly in bad faith, since among

other things, the Township already concluded that the DelGuericos have a legal right to

operate their business, the Township has itself conducted business for years on the

DelGuerico property and licensed their business, and the DelGuericos relied on the

Township's actions when expanding and continuing their business.  (C. ¶¶22-24, 29, 32,

---

[9] See also, *United Artists Theatre Circuit, Inc. v. Township of Warrington,* 2001 WL 936638
(E.D. Pa.)(Shapiro, S.J.)(The court denied summary judgment motions by members of a township
board of supervisors on a movie theatre's claim that they denied its substantive due process right to
by arbitrarily subjecting a land development project to heightened scrutiny and by intentionally
delaying the project's approval to receive an "impact" fee from a competing developer)(a copy of
this case is attached as Exhibit "C"); *Thornbury Noble, Ltd., supra,* at 2000 WL 1358483, at 2-3
(This court denied a motion to dismiss a substantive due process claim by a developer claiming that
a planned supermarket was rejected by the township for improper reasons, including the developer's
refusal to make a special contribution to the township and to give an unfair advantage to another
developer who would pay such a fee) (see Exhibit "B"); *Woodwind Estates, Ltd. v. W.J. Gretkowski,*
205 F.3d 118, 122 (3d Cir. 2000)(The Third Circuit reversed a grant of a Rule 50 motion, on the
basis of evidence presented at trial provided the jury with a basis for concluding that the township
denied approval for a low income housing subdivision for bad faith reasons or improper motives).

35, Ex. "C").

The Township Defendants had started and dropped prior proceedings against the Plaintiffs, showing that they "will brazenly pursue false claims again and again until Plaintiffs are destroyed by the power and limitless resources of the municipal government." [C. ¶53(b)]).  How many times are the Plaintiffs expected just to quietly accept this harassment?  Plaintiffs have pled a motive for the Township to pursue these actions in bad faith and without basis – the Township is working to help and silence the Hammills and views this Cease and Desist Order as a way to illicitly harass the Plaintiffs out of business, since the Township has no legal grounds to accomplish the removal of the Plaintiffs from Springfield Township.  (C. ¶39).  Thus, the Plaintiffs plead a substantive due process claim sufficient to proceed to discovery.

### 2.    *Plaintiffs' Substantive Due Process Claim Is Ripe For Adjudication*

Although the Defendants pretend not to understand the federal claim (identifying it incorrectly as a takings claim), they do assert that the claim should be dismissed because it is not ripe.  (Def. Memo. at 3-5).  However, the type of claim Plaintiffs have asserted is ripe, without a final decision from the Zoning Hearing Board.  Plaintiffs' claims that the Township Defendants are unlawfully wielding their governmental power in various ways to break down Plaintiffs are independent from the end result of the zoning appeal.

The seminal case (not cited by Defendants) is *Blanche Road Corporation v. Bensalem Township,* 57 F.3d 253, 267-68 (3d Cir. 1995).  That case was brought by a

25

developer (Blanche Road) who was trying to obtain permits for lots in an industrial park. Bensalem Township opposed the development of the industrial park. According to the developer, "the Township, through its supervisors and employees, engaged in a campaign of harassment designed to force Blanche Road to abandon its development of an industrial park." *Id.* at 57 F.3d 258.

Of course, Bensalem Township, like Springfield Township here, maintained that all it was doing was applying the local zoning rules in a legal and reasonable manner. This "legal and reasonable" application included, after the developer protested impact fees imposed on the project by Bensalem Township, the township issued citations and stop work orders to the developer, brought in outside agencies to cite the developer for environmental issues (like the Springfield Township Defendants have attempted to the Plaintiffs), revoked building permits, and "slowed down" the development by review the developer's permit applications with extra scrutiny for every possible violation. *Id.* at 260. As a result of these actions, the developer never finished the project.

The developer brought a section 1983 action against the Township and its employees and officials. After the developer was awarded $1.5 million in the first trial, that verdict was erased on post-trial motions because of the misconduct of plaintiffs' counsel. *Id.* at 261-262. At the close of the plaintiffs' case on the second trial, the district court granted judgment as a matter of law to the defendants.

One of the grounds for appeal to the Third Circuit was the district court's determination that the developer's claim with respect to lots it did not purchase and for which it did not apply for permits was not "ripe" because the developer did not exhaust the zoning appeal procedures. *Id.* at 267. The Third Circuit determined that the developer's claim was "substantively different" than those presented in ripeness cases and that the developer was not required to apply for permits and wait for a final zoning board decision before bringing the substantive due process claim. The Court stated:

> "In the instant case, however, plaintiffs' claims are not dependent on a final decision from the county, since plaintiffs are not appealing from an adverse decision on a permit application. ***Rather, plaintiffs are asserting that defendants, acting in their capacity as officers of the Township, deliberately and improperly interfered with the process by which the Township issue permits, in order to block or to delay the issuance of plaintiffs' permits, and that defendants did so for reasons unrelated to the merits of the application for the permits. Such actions, if proven, are sufficient to establish a substantive due process violation, actionable under § 1983, even if the ultimate outcome of plaintiffs' permit applications was favorable.*** See ***Bello v. Walker,*** 840 F.2d 1124, 1128-30 (3d Cir. 1988) (factfinder could conclude that council members, acting in their official capacity, improperly interfered with building permit process for partisan political or personal reasons unrelated to the merits of the permit applications). ***This is a substantively different type of claim than that presented in the ripeness cases, and internal review of the individual permit decisions is thus unnecessary to render such a claim ripe.***" (emphasis supplied), *Id.* at 126-28.

Like Bensalem Township in ***Blanche Road,*** the Springfield Township Defendants here are conducting a campaign of harassment against Plaintiffs, using all available means including the Township zoning ordinances and various other regulations that the

Plaintiff might be violating, like having buried trash on their property (which Plaintiffs

do not). The Township Defendants have twice before moved to shutter Plaintiffs'

business, only to abandon their legal efforts after concluding that the Plaintiffs had "an

overwhelming case" of vested rights to use their property for a recycling center and that

the Township had an "unlikely chance of success" in closing down the DelGuericos'

business through the legal system. (C., Ex. "C"). Plaintiffs relied on these

representations, and Defendants' continued recycling work on Plaintiffs' property, to

continue and expand their business.

Under these circumstances, it is an abuse of power for the Township Defendants

to issue a Cease and Desist Order against the Plaintiffs, attacking their business for a third

time, an arbitrary action taken in bad faith and for improper motives. Plaintiffs will have

these complaints even if the ultimate outcome of the zoning appeal is favorable to them.

It is unnecessary to wait for such a determination.

Another instructive decision is *Thornbury Noble, Ltd. v. Thornbury Township,* 2002

WL 442827 (E.D. Pa.)(O'Neill, J.)(see Exhibit "A" hereto). There, Thornbury Noble,

the developer, sought to change a plan for retail stores and to re-zone adjacent property.

At a meeting to discuss this plan, a Township supervisor asked if Thornbury Noble

would make a contribution to the township for open space. Thornbury Noble declined to

do so. The Board then rejected the requested rezoning. *Id.* at *1. After losing one

potential supermarket tenant, Thornbury Noble found another and presented a sketch plan

the township planning commission with the statement that the plan fell within existing

permits. That commission subsequently determined that this was not an amended plan

but a new application requiring additional approvals. This caused substantial delays and

the potential supermarket tenant pulled out.

The plaintiff asserted that the township's motives in denying Thornbury Noble's

zoning requests were improper. Another developer who was willing to make a

"voluntary contribution" to the Township was granted rezoning for a supermarket. *Id.* at

*2. The Township then promoted that project to one prospective supermarket as likely to

obtain zoning approval sooner than Thornbury Noble.

Thornbury Noble filed a substantive due process section 1983 claim against the

Township and the members of the Board of Supervisors. The Defendants asserted that

Thornbury Noble's claim related to the township's classification as a new plan requiring

a conditional use application should be dismissed as unripe. *Id.* at *6. Judge O'Neill

disagreed, finding the situation to be similar to ***Blanche Road.*** He noted that a

"substantively different" type of claim was presented in both cases from most "ripeness"

cases, thus rendering review of the individual permit decisions unnecessary to make the

claim ripe:

> "Applying this rationale to the case before me plaintiff need
> not establish that it followed proper procedure in order to
> establish that its claim is ripe for adjudication ***because the
> basis for its suit is that this procedure was deliberately interfered
> with.*** Accordingly, defendants' motion for summary
> judgment on the grounds that plaintiff's claim concerning its
> alternative amended plan is not ripe will be denied."

29

(emphasis supplied), *Id.* at *8.

Again, Plaintiffs' situation is analogous to the ***Thornbury*** case, where the defendants' ripeness argument was rejected.  The Township is favoring one set of residents over another, for improper reasons (threats and pressure from the Hammill Defendants and the opportunity to backdoor an attack on Plaintiffs that could no longer be brought through the front door, because of Solicitor McNamara's opinion and other Township actions).  The Township is deliberately misusing the zoning processes to injure the Plaintiffs.  Thus, the Complaint presents a substantively different type of claim than those in the cases Defendants cite.[10]

---

[10] *Taylor Investment, Ltd. v. Upper Darby Township,* 983 F.2d 1285 (3d Cir. 1993), *reh'g den., cert den.,* 510 U.S. 914 (1993)(Def. Memo. at 3-4) was decided *before* the *Blanche Road* Court distinguished between types of substantive due process claims.  The same is true for *Trinity Resources, Inc. v. Township of Delanco*, 842 F. Supp. 782 (D.N.J. 1994)(Def. Memo. at 5).

Importantly, none of the Defendants' cases involved multiple uses of governmental power against the plaintiffs, even after the plaintiffs position's were legally vindicated as we have here. The Plaintiffs' situation is unique.  The Township repeated its attack on Plaintiffs' three times, even after concluding that the Plaintiff were in the right.  The other plaintiffs did not have governments doing business with them for years before claiming their operations were illegal, or writing letters and releasing those letters publically indicating that the Plaintiffs had the legal right to operate their business and admitting that Cease and Desist Orders would essentially be undertaken in bad faith if imposed on the Plaintiffs.

Moreover, as Defendants' discussion on page 4 of *Williamson Planning Commission v. Hamilton Bank,* 473 U.S. 172 (1985) indicates, that case involved primarily a takings argument, which is not present here.  Defendants also argue, on page 5, that they and the public will be "suffer hardship" if the case is permitted to proceed in court before the Zoning Hearing Board rules because that ruling would moot further litigation. This is not true.  It is ludicrous for Defendants to attack the Plaintiffs arbitrarily and in bad faith, only to claim they will be harmed if Plaintiffs are allowed to fight back.  Does the legal system work only in Defendants' favor?  They who initiated an action in bad faith cannot claim to unfairly accrue attorneys fees as a result.  Defendants' argument brings to mind Abraham Lincoln's fable about the man accused of patricide who sought to enlist the jury's

The Plaintiffs seek compensatory damages, punitive damages and attorneys fees for Defendants' actions.[11]  Plaintiffs allege that they have already suffered injuries including physical and emotional problems as a result of the Defendants' improper actions to try to close down their business for a third time.  (C. ¶48).  They have been forced to expend attorneys fees to defend themselves against a defenseless action on the part of the Township Defendants.  As the old saying goes, "You can't fight City Hall."  The Township government has limitless resources to throw at their efforts to suppress the Plaintiffs.  Unfortunately, the Plaintiffs do not have limitless resources to defend themselves against bad faith governmental actions.  The Plaintiffs' injuries are real and present.  They do not need to await a zoning hearing board decision to be injured or relieved from injury by the result. The result will not affect the fact that the Township

---

sympathy because he was an orphan.  Plaintiffs are the victims here, expending attorneys fees and suffering emotional strain because of a proceeding that should not have happened, regardless of the end result.  Even if the Plaintiffs win their appeal, their claims for emotional suffering and attorneys fees will not just go away.  They already have suffered actual injuries that cannot be remedied in the zoning proceeding.  How times can the Plaintiffs be expected to suffer the cycle of Township's arbitrary initiation of zoning proceedings, determinations that the Plaintiffs have a legal right to continue their business and then another proceeding each time a new neighbor complains about the business?

Also unlike the plaintiffs in the cases cited by Defendants, out of an abundance of caution the Plaintiffs have appealed the Cease and Desist Order and are participating in zoning hearings on that appeal.  It should not be too long before a determination will be issued (unless the Zoning Hearing Board stalls for strategic reasons).

[11]  It is well settled that plaintiffs in section 1983 claims may seek compensatory damages including not merely out-of-pocket losses and monetary harms, but also for injuries that are personal, such as humiliation, mental anguish and suffering.  *Memphis Community School District v. Stachura,* 477 U.S. 299, 306-307, 106 S.Ct. 2537, 2542-2543 (1986); *Blanche Road Corp., supra, at* 57 F.3d 265.

Defendants abused available procedures and their governmental powers to pursue the Plaintiffs in bad faith.

**3.    *The Complaint States A Claim For Harassment Distinct From The Cease And Desist Order, Which The Zoning Hearing Result Will Not Affect***

Additionally, in this case (unlike those cited by the Defendants), the Complaint alleges that the Township Defendants are using not only the Cease and Desist Order, but also their governmental power to file bogus complaints with various state and local agencies against the DelGuericos.  (C. ¶41, 45).  The  Springfield Township Defendants have sent a stream of inspectors out to the property to look for any legal violation they can find.  These incursions have been unsuccessful.  Plaintiffs have been targeted for "extra scrutiny" to encourage them to relocate their business elsewhere.  (See C., ¶53).  Notably, the Township Defendants have not mentioned these allegations to the Court, trying to make this case appear to be nothing more than a run-of-the-mill zoning matter.

The Complaint alleges that the stream of inspectors are part of a pattern of harassment and intimidation directed against the DelGuericos.  This occurred while Defendant knew full well that Tony DelGuerico was recovering from his first eye surgery for a detached retina, a condition that threatens his eyesight.  (C. ¶45).  The inspections have contributed to the physical and emotional suffering of Tony and Leigh DelGuerico.  (C. ¶48).

The outcome of the zoning proceedings has no bearing on the past and probable future harassment of the DelGuericos in this manner.  Indeed, should the DelGuericos

win the appeal, the inspectors will have to look for different possible violations even harder. For the instant purposes, the allegations of the Complaint must be accepted as true. Even if the Court decides that the DelGuericos cannot proceed on the allegations related to the Cease and Desist Order until the Zoning Hearing Board renders a decision, the Court should allow the independent claim arising from the investigators (who had no connection to the Cease and Desist Order) to proceed.

B.    *IT IS UNNECESSARY FOR THE COURT TO DISMISS THE CLAIMS AGAINST THE INDIVIDUAL TOWNSHIP DEFENDANTS IN THEIR OFFICIAL CAPACITY*

On page 10 of their Memorandum, Defendants argue that the claims against the individual Township Defendants (Mease, Lamana, Wieder, Hopkins, Zisko and Halderman, Jr.) should be dismissed because the claims against them are essentially covered in the claims against the Township. Even though it may not have been strictly necessary for the Plaintiffs to name the individual Township Defendants in their official capacities, that does not mean those claims should automatically be dismissed.

When refusing to grant a motion to dismiss making this same argument in a section 1983 case, then Chief Judge Louis Bechtle stated:

> "Defendants, in their motion to dismiss, request that this court dismiss Dieterly's section 1983 claim against the individual defendant, Sorrenti, in his official capacity, because, they argue, that this claim merges with the claims against Cheltenham. While it is true that the actions of an official acting in his official capacity is equated with the action of the municipality itself, see ***Stand v. School Dist.***, 775 F.2d 122, 130 (3d Cir. 1985), this proposition does not stand for the legal principle that the claims against an individual defendant

33

in his official capacity must be dismissed where the governmental entity or municipality is also named.  *Cf. Owen v. Independence,* 445 U.S. 622 (1980)."  *Dieterly v. Sorrenti,* 1992 WL 310302, *3, n.3 (W.D.Pa.)(Bechtle,C.J.)(a copy of this opinion is attached as Exhibit "E").

So, too, here the motion to dismiss the individual Defendants in their official

capacities should be denied.

## V.    CONCLUSION

For all of the above reasons, the Township Defendants' motion should be denied.

*Respectfully submitted,*

_____

*NEIL A. MORRIS*

_____

*JULIE L. KITZE*
*Attorneys for Plaintiffs, Tony and Leigh DelGuerico and DelGuerico's Wrecking & Salvage Inc.*

*OF COUNSEL:*

*NEIL A. MORRIS ASSOCIATES, P.C.*
*Mellon Bank Center*
*1735 Market Street, 43rd Floor*
*Philadelphia, PA 19103*
*Tel. (215) 751-0600*
*Fax (215) 751-1425*
*nmorris@namapc.com*

*Date:   September 5, 2002*

34

## CERTIFICATION OF SERVICE

**JULIE L. KITZE, Esquire,** hereby certifies that true and correct copies of ***Plaintiffs'***

***Response In Opposition To Motion To Dismiss Of Defendants Springfield Township, Jeffrey***

***Mease, Pete Lamana, Rodney Wieder, James Hopkins, Robert Zisko and Charles Halderman,***

***Jr.*** and ***Brief In Support Thereof*** were served upon the following, *Via* U.S. First Class

Mail, Postage Prepaid, on September 5, 2002:


David M. Maselli, Esquire
Wright & O'Donnell
15 East Ridge Pike, Suite 570
Conshohocken, PA 19428

Attorney for Defendants Springfield
Township, Jeffrey Mease, Peter Lamana,
Rodney Wieder, James Hopkins, Robert
Zisko and Charles Halderman, Jr.

John M. Heley, Esquire
245 West Broad Street
P.O. Box 558
Quakertown, PA 18951

Attorney for Defendants John
 Hammill and Patricia Hammill


_____
**JULIE L. KITZE**
**Attorney for Plaintiffs, Tony**
**DelGuerico, Leigh DelGuerico and**
**DelGuerico's Wrecking & Salvage,**
**Inc.**

**OF COUNSEL:**

**NEIL A. MORRIS ASSOCIATES, P.C.**
**Mellon Bank Center**
**1735 Market Street, 43rd Floor**
**Philadelphia, PA 19103**
**Tel. (215) 751-0600**
**Fax (215) 751-1425**

**Date: September 5, 2002**

35