IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TONY DELGUERICO, et al. | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | No. 02-CV-3453 |
| | : | |
| SPRINGFIELD TOWNSHIP, et al. | : | |
| | : | |
| Defendants, | : | |

**<u>ORDER</u>**

AND NOW this _____ day of _____, 2004, upon consideration of Plaintiffs' Motion to Enforce Settlement Agreement, it is hereby ORDERED and DECREED that said Motion is DENIED.

BY THE COURT:

_____
John R. Padova, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TONY DELGUERICO, et al.     : | |
|                              : | |
|     Plaintiffs     : | |
|                              : | |
| v.     : | No. 02-CV-3453 |
|                              : | |
| SPRINGFIELD TOWNSHIP, et al.     : | |
|                              : | |
|     Defendants,     : | |

**REPLY OF DEFENDANT SPRINGFIELD TOWNSHIP TO
PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Defendant Springfield Township, by and through counsel, Wright & O'Donnell, P.C., hereby responds to Plaintiffs' Motion to Enforce, and avers as follows:

1.-2.  Denied as stated. According to Plaintiffs' Complaint, Anthony DelGuerico (Plaintiff's father) began storing trucks, junk, metal recyclables and scrap metal on the property in the 1960s. At some point thereafter, the Plaintiffs began using the property for their solid waste disposal business and junk disposal site. Plaintiffs' claim that the business pre-dates the Township's 1976 Zoning Ordinance, but have not produced any documents to show as much.

The DelGuerico property is located in the Township's "Resource Protection District," which does not allow for the operation of solid wastes facilities. Over the years, the Township has received numerous complaints (i.e. noise, smell, dust, eye sore, etc.) by residents of the Township about the DelGuerico business. Numerous attempts by the Township to work with the DelGuericos and the residents to rectify the situation were unsuccessful.

The Township Solicitor, James McNamara, Esquire, wrote an April 1, 1997 opinion letter concerning the DelGuerico property. The Solicitor's opinion is that their current use of the

property is beyond the scope of any "vested right" they may have had in 1997.

On numerous occasions in the months prior to the issuance of the cease and desist letter, the Township's Code Enforcement Officer, Jeffrey Mease engaged Plaintiff Tony DelGuerico in discussions about a huge pile of trash accumulating in the driveway of the DelGuerico property. Mr. DelGuerico was asked to remove the pile of trash, which Mr. DelGuerico agreed to do. Only after several broken promises by Mr. DelGuerico to remove the trash, was the cease and desist letter issued.

The Township is not trying to completely shut down Plaintiffs' business. The cease and desist letter makes no such attempt. The cease and desist letter directs that the DelGuericos cease from accepting "refuse and scrap materials being brought to your property and remove accumulated materials within thirty days."

3.-6.   It is admitted that a settlement conference was held with Judge Padova in November of 2002. It is specifically denied that settlement was reached at that conference regarding material terms.[1] In May of 2004, the first "draft" Consent Decree was circulated amongst counsel. Some terms of the evolving agreement were memorialized in the Consent Decree, while other provisions were not contained therein.

Regarding some of the agreed upon provisions, Plaintiffs agreed to erect a 30,000 square foot building on their property. However, Plaintiffs are now attempting to circumvent payment of various costs and fees which are usual and customary regarding a building of this type. Furthermore, Plaintiffs' position is that they would not be bound by the Township Subdivision and Land Development Ordinance (the Ordinance) and the Pennsylvania Solid Waste

---

[1] The Court will note that following the Settlement Conference, the case was scheduled to begin trial on September 27, 2004.

Management Act (the Act).  Plaintiffs have no support in law, or in fact, for this assertion.

In fact, the position of the Township on this issue is specifically set forth in a November 22, 2002, letter received by Plaintiffs' counsel.  See Letter attached hereto as Exhibit "A."  In that letter, the Plaintiffs were reminded that the Township engineer would need to be involved in the planning and review of the construction, and would need to agree that the construction was compliant with the Ordinance and the Act.

Curiously, in their moving papers, Plaintiffs cite to three different dates where the agreement was allegedly memorialized: April 15, 2004, May 14, 2004, and May 25, 2004.  Yet they fail to note how, on any of those dates, a valid settlement agreement was entered by the parties.  There is no writing to confirm a meeting of the minds, nor is there an alleged conversation which confirmed a meeting of the minds.

It is admitted that the Hammill Defendants have been dismissed from this matter, via stipulation.

7.-8.    Denied.  It is specifically denied that the Plaintiffs were unaware as to the usual and customary fees associated with a building such as the one set forth in the Consent Decree. Plaintiffs are merely attempting to use semantics to circumvent payment of costs and fees associated with *any* construction in the Township.  These issues are memorialized in the June 10, 2004, letter to David Macfarlan, Esquire, attached hereto as Exhibit "B."  Plaintiffs' counsel was told throughout the litigation process that Plaintiffs would pay the permit fees, escrows, and engineering fees as any builder would have to pay with any other project.

Furthermore, the Township Solicitor, James McNamara, Esquire, never agreed to the resolution of the zoning issues as presented in the original "draft" of the decree, and indicated in the May 21, 2004, letter.  A copy of the May 21, 2004, letter is attached hereto as Exhibit "C."

The Solicitor indicated in that letter that the parties had not discussed the issues since the previous settlement conference. Furthermore, the May 21, 2004, correspondence clearly indicates that the Solicitor still needed to consult with the Township Board regarding these issues.

It is important to note that Plaintiffs' July 2, 2004, cover sheet sending the *second* Consent Decree[2] specifically stated that it was a "draft Consent Decree." The letter requests that any "comments" be forwarded to Plaintiffs' counsel. The letter confirms that there has not been a meeting of the minds for settlement of this case. The letter requests comments be sent to counsel, "so that we may resolve this case." Clearly the context of the letter is such that an agreement has not been reached, and the parties continue to negotiate the terms of the settlement. A Copy of the July 2, 2004, letter is attached hereto as Exhibit "D."

9. It is admitted that a conference was held on May 25, 2004, and that the Court was advised that the parties were finalizing the wording of the Consent Decree. Again, this indicates that an agreement had not been reached.

10. Denied. It is specifically denied that the Township Solicitor changed the terms of the agreement. Plaintiffs' counsel was told throughout the litigation process that the permit fees, escrows, and engineering fees would need to be paid, as required by all builders with other projects in the Township. Furthermore, the letter of November 22, 2002, memorializes Plaintiffs' duties under the Township Ordinance and the Pennsylvania Solid Waste Management Act. Upon request, copies of the Act and the Ordinance were provided to Plaintiffs' counsel.

The Plaintiffs' position that they should not have to pay the usual and customary fees, costs and escrows for construction is without support. Additionally, Plaintiffs' position that they

---

[2] Plaintiffs seek to enforce this "draft" Consent Decree.

should not have to follow the Ordinance and the Act is without merit.

11.-14.    Denied.  It is specifically denied that the parties had a meeting of the minds on the material terms of an agreement.  Plaintiffs were advised in November of 2002 regarding provisions which were required as part of any deal, including compliance with the Act and the Ordinance.  Furthermore, Plaintiffs were advised numerous times that payment of usual and customary fees, escrows and costs would be Plaintiffs' responsibility, as with any other construction in the Township.

15.    It is specifically denied that the Township Defendants seek to violate or change the terms of an agreement.  To the contrary, pursuant to the proposed agreement, Plaintiffs are to build a 30,000 square foot building.  However, Plaintiffs seek to do so without complying with the law, and without paying standard costs and fees.

It is important to note that the Plaintiffs have failed to produce one piece of evidence to confirm that the Township has agreed to waive the construction costs and fees, or that the Township agreed to (*or even had the authority to agree to*) waive the provisions of the Ordinance and/or the Act.

16.    Denied.  Plaintiffs have not cited any case law to support their position that a Motion to Enforce should be granted because Plaintiffs stopped taking discovery.  Upon denial of Plaintiffs' Motion, presuming Plaintiffs actually cite discovery that is outstanding, the proper remedy is a short continuance to perform the discovery which Plaintiffs allegedly need.  This matter was filed in 2002, and has actually been in negotiation for much longer than that.

17.    Denied.  For the reasons stated herein and in the attached Memorandum of Law, Plaintiffs' Motion should be denied.

WHEREFORE, Defendants respectfully request that this Honorable Court deny

Plaintiffs' Motion, and enter the enclosed Order.

                                       Respectfully submitted,

                                       WRIGHT & O'DONNELL, P.C.

                                    BY: /s/ David M. Maselli
                                          David M. Maselli
                                          P.A. ID No. 70824
                                          David R. Friedman
                                          P.A. ID No. 76494

                                          15 East Ridge Pike Ste 570
                                          Conshohocken, PA 19428
                                          610.940.4092
                                          Attorney for Defendant
                                          Springfield Township

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TONY DELGUERICO, et al. | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | No. 02-CV-3453 |
| | : | |
| SPRINGFIELD TOWNSHIP, et al. | : | |
| | : | |
| Defendants, | : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE
REPLY OF DEFENDANT SPRINGFIELD TOWNSHIP TO
PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Defendant Springfield Township, by and through counsel, Wright & O'Donnell, P.C., hereby responds to Plaintiffs' Motion to Enforce, and avers as follows:

**I.    Facts and Procedural History:**

Plaintiffs, Tony DelGuerico, Leigh DelGuerico, and DelGuerico's Wrecking & Salvage, Inc., commenced this action against Springfield Township, its Code Enforcement Officer and Board of Supervisors ("Township Defendants") and two neighbors, Patricia John Hammill, h/w. Plaintiffs allege that the Township Defendants, by issuing a Cease and Desist Order in June 2001, violated their substantive due process rights pursuant to 42 U.S.C. § 1983, and the Pennsylvania Constitution.  Plaintiffs also seek recovery pursuant to Pennsylvania law, under the theories of intentional infliction of emotional distress, Count III, and intentional interference with contractual relations, Count IV.  Plaintiffs' allegations against the Hammills were for conspiracy, but have been dismissed pursuant to a stipulation filed with the Court.

According to Plaintiffs' Complaint, Anthony DelGuerico (Plaintiff's father) began storing trucks, junk, metal recyclables and scrap metal on the property in the 1960s.  At some point

thereafter, the Plaintiffs began using the property for their solid waste disposal business and junk disposal site. Plaintiffs' claim that the business pre-dates the Township's 1976 Zoning Ordinance, but have not produced any documents to show as much.

The DelGuerico property is located in the Township's "Resource Protection District," which does not allow for the operation of solid wastes facilities. Over the years, the Township has received numerous complaints (i.e. noise, smell, dust, eye sore, etc.) by residents of the Township about the DelGuerico business. Numerous attempts by the Township to work with the DelGuericos and the residents to rectify the situation were unsuccessful.

The Township Solicitor, James McNamara, Esquire, wrote an April 1, 1997 opinion letter concerning the DelGuerico property. The Solicitor's opinion is that their current use of the property is beyond the scope of any "vested right" they may have had in 1997.

On numerous occasions in the months prior to the issuance of the cease and desist letter, the Township's Code Enforcement Officer, Jeffrey Mease engaged Plaintiff Tony DelGuerico in discussions about a huge pile of trash accumulating in the driveway of the DelGuerico property. Mr. DelGuerico was asked to remove the pile of trash, which Mr. DelGuerico agreed to do. Only after several broken promises by Mr. DelGuerico to remove the trash, was the cease and desist letter issued.

The Township is not trying to completely shut down Plaintiffs' business. The cease and desist letter makes no such attempt. The cease and desist letter directs that the DelGuericos cease from accepting "refuse and scrap materials being brought to your property and remove accumulated materials within thirty days."

After Plaintiffs filed suit, a settlement conference was held with the Court in November of 2002. Settlement was not reached at that conference. Thereafter, some of the material terms

in which to build an agreement were reached.[3] In May of 2004, Plaintiffs' first "draft" Consent Decree was circulated amongst counsel. Some terms of the evolving agreement were memorialized in this draft, while other provisions were not.

One agreed provision was that Plaintiffs agreed to erect a 30,000 square foot building on their property. However, Plaintiffs are now attempting to circumvent payment of various cost and fees which are usual and customary regarding a building of this type. Furthermore, Plaintiffs' position is that they would not be bound by the Township Subdivision and Land Development Ordinance and the Solid Waste Management Act.

In fact, the position of the Township on this issue is specifically set forth in a November 22, 2002, letter received by Plaintiffs' counsel. See Exhibit "A." In that letter, the Plaintiffs were reminded that the Township engineer would need to be involved in the planning and review of the construction, and would need to agree that the construction was compliant with the Ordinance and the Act.

Plaintiffs' counsel was told throughout the litigation process that the permit fees, escrows, and engineering fees would need to be paid, as with all other projects in the Township. Furthermore, the letter of November 22, 2002, memorializes Plaintiffs' duties under the Ordinance and the Act. Plaintiffs were advised in November of 2002 regarding provisions which were required as part of any deal, including compliance with the Act and the Ordinances. Furthermore, Plaintiffs were advised numerous times that payment of usual and customary fees, escrows and costs would be Plaintiffs' responsibility, as with any other construction in the Township.

---

[3] The Court will note that following the Settlement Conference, the case was scheduled to begin trial on September 27, 2004.

Plaintiffs are merely attempting to use semantics to circumvent payment of costs and fees associated with *any* construction in the Township. These issues are also memorialized in the letter of James McNamara of June 10, 2004, to David Macfarlan, Esquire. See Exhibit "B." Plaintiffs' counsel was told throughout the litigation process that the permit fees, escrows, and engineering fees would need to be paid as with any other project.

Township Solicitor, James McNamara, Esquire, never agreed to the resolution of the zoning issues as presented in the original "draft" of the decree, and indicated in his May 21, 2004, letter. See Exhibit "C." The Solicitor indicated that the parties had not discussed the issues since the previous settlement conference in November of 2002. Furthermore, the May 21, 2004, correspondence clearly indicates that the Solicitor still needs to consult with the Board regarding these settlement issues. Simply because the Plaintiff forwards a proposed Consent Decree does not confirm that settlement has been reached.

A conference was held on May 25, 2004, and that the Court was advised that the parties were finalizing the wording of the Consent Decree. Again, an agreement had not yet been reached.

The July 2, 2004, letter enclosing the second Consent Decree (which Plaintiffs seek to enforce) specifically stated that this was a "draft Consent Decree." The letter requests that any "comments" be forwarded to Plaintiffs' counsel. The next statement confirms that there has not been a meeting of the minds for settlement of this case. The letter requests comments be sent to counsel, "so that we may resolve this case." Clearly the context of the letter is such that an agreement has not been reached, and the parties continue to negotiate the terms of the Consent Decree. See Exhibit "D."

Curiously, in their moving papers, Plaintiffs cite to three different dates where the

agreement was allegedly memorialized: April 15, 2004, May 14, 2004, and May 25, 2004. Yet they fail to note how on any of those dates a valid settlement agreement was entered by the parties. There is no writing to confirm a meeting of the minds, nor is there an alleged conversation with a meeting of the minds.

The Plaintiffs' position that they should not have to pay the usual and customary fees, costs and escrows for the construction is ridiculous. Additionally, Plaintiffs' position that they should not have to abide by the Ordinance and the Act is also ridiculous.

Plaintiffs have failed to produce one piece of evidence to confirm that the Township has agreed to waive the construction costs and fees, or that the Township agreed to (*or even had the authority to agree to*) waive the provisions of the Ordinances and/or the Act.

## II.  Legal Argument:

The court has jurisdiction to enforce a settlement agreement entered into by parties in a case currently pending before it. McCune v. First Judicial Dist. of Pa. Probation Dep't, 99 F. Supp. 2d 565, 566 (E.D. Pa. 2000).

A settlement agreement is binding *once the parties express mutual assent to its terms and conditions*. Main Line Theatres, Inc. v. Paramount Film Distrib. Corp., 298 F.2d 801, 803 (3d Cir. 1962); Pugh v. Super Fresh Food Markets, Inc., 640 F. Supp. 1306, 1308 (E.D. Pa. 1986)(emphasis added).

The settlement of a lawsuit and the relationship between an attorney and his or her client are areas traditionally governed by state law and there is no conflicting federal interest. Tiernan v. Devoe, 923 F.2d 1024, 1032-33 (3d Cir. 1991) ("Because our focus is on an attorney's relationship with his clients, no substantial federal interest is affected here, and we opt for state

law."); Nice v. Centennial Sch. Distr., 98 F. Supp. 2d 665, 2000 WL 714667, at *2 (E.D. Pa. 2000) (stating that "when federal law does not expressly establish a rule of decision," and "where state law on the issue is well-developed and the application of state law will not impinge upon any federal interest, the court may 'borrow' state law to fill the gap in the federal statutory scheme").

Under Pennsylvania law, "to constitute a contract, the acceptance of the offer must be absolute and identical with the terms of the offer." Hedden v. Lupinsky, 405 Pa. 609, 176 A.2d 406, 408 (Pa. 1962); accord, Mazzella v. Koken, 559 Pa. 216, 739 A.2d 531, 536 (Pa. 1999). A reply to an offer which purports to accept it, but instead changes its terms, is not an acceptance but a counter-offer. Yarnall v. Almy, 703 A.2d 535, 539 (Pa. Super. Ct. 1997). Pennsylvania law requires agreement on more than merely the "core financial terms" of a contract, however - it requires that the terms of the offer and acceptance be "identical." Hedden, 176 A.2d at 408.

Settlement agreements are enforced according to principles of contract law. Pulcinello v. Consolidated Rail Corp., 784 A.2d 122, 124 (Pa. Super. 2001). Courts will enforce a settlement agreement if all its material terms are agreed upon. Century Inn, Inc. v. Century Inn Realty, 358 Pa. Super. 53, 516 A.2d 765, 767 (Pa. Super. 1985).

The court has the authority to enforce a settlement agreement entered into by parties while litigation is pending. Berger v. Grace Line, Inc., 343 F. Supp. 755, 756 (E.D. Pa. 1971). Where the agreement's existence or terms are undisputed, no hearing is necessary before the court acts to enforce it. Tiernan v. Devoe, 923 F.2d 1024, 1031 (3d Cir. 1991). In contrast, where there is a substantial factual dispute as to the existence or terms of a settlement agreement, the court must conduct an evidentiary hearing. Id. To merit a hearing, however, the facts in dispute must be material; where essential issues of fact are lacking, and there is little likelihood that the

settlement could be upheld, it is within the court's discretion to forego a hearing <u>Stewart v. M.D.F., Inc.</u>, 83 F.3d 247, 251-52 (8th Cir. 1996).

It is clear from the facts and writings in this case that the parties have not reached a meeting of the minds to enter into a settlement agreement. Certain terms that have been identified as issues for the resolution of the matter have been ignored in the Consent Decrees submitted by Plaintiffs. Plaintiffs are attempting to use this Motion to circumvent their requirement to pay permit fees, appropriate engineering costs, and escrows for the construction at issue. Plaintiffs are attempting to use this Motion to obviate the requirement that Plaintiffs follow the local Ordinances, and laws of the Commonwealth. Plaintiffs essentially state that they should be exempt from paying the fees and costs that every other builder in the Township is required to incur. Plaintiffs also state that they should be exempt from following certain laws for construction that everyone else is required to follow. Lastly, Plaintiffs do not cite any facts of law to support these positions.

Lastly, Plaintiffs have failed to cite any case law to support their position that a Motion to Enforce should be granted because Plaintiffs stopped taking discovery. Upon denial of the instant Motion, presuming Plaintiffs actually cites discovery that is outstanding, the proper remedy is a short continuance to complete the discovery which Plaintiffs allegedly need. This matter was filed in 2002, and has actually been in negotiation for much longer than that. Hearings have been held on the underlying matter. Defendants are unaware as to what discovery is outstanding.

WHEREFORE, Defendants respectfully request that this Honorable Court deny Plaintiffs' Motion, and enter the enclosed Order.

                                                Respectfully submitted,

WRIGHT & O'DONNELL, P.C.


BY: <u>/s/ David M. Maselli</u>
    David M. Maselli
    P.A. ID No. 70824
    David R. Friedman
    P.A. ID No. 76494

    15 East Ridge Pike Ste 570
    Conshohocken, PA 19428
    610.940.4092
    Attorney for Defendant
    Springfield Township

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing pleading was filed with the Court via the Electronic Case Filing system and was served on the below listed of counsel of record through the same means or by U.S. Mail, postage pre-paid, this 18th day of August, 2004.

Neil A. Morris, Esquire
Neil A. Morris Associates, P.C.
Mellon Bank Center
1735 Market Street, 43rd Floor
Philadelphia, PA 19103

John M. Heley, Esquire
245 W. Broad Street
P.O. Box 558
Quakertown, PA 18951

          /s/ David M. Maselli
          David M. Maselli