IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| *TONY DELGUERICO* and *LEIGH DELGUERICO* | : | CIVIL ACTION |
| | : | No. 02-CV-3453 |
| and | : | |
| *DELGUERICO'S WRECKING & SALVAGE* | : | |
| *Plaintiffs,* | : | |
| v. | : | |
| *SPRINGFIELD TOWNSHIP, et al.* | : | |
| *Defendants.* | : | |
| | : | |

**PLAINTIFFS' SUPPLEMENTAL REPLY BRIEF TO PLAINTIFFS'
MOTION TO ENFORCE SETTLEMENT AGREEMENT**

This matter is currently scheduled to be discussed at the final pre-trial conference on August 31, 2004. Plaintiffs here will respond to the mis-statements of Defendants in their response to Plaintiffs' motion. We will not respond to Defendants attempt to influence this Court by arguing underlying facts of the matter. As such facts are not relevant to the agreement which was reached between the parties at the settlement conference of April 15, 2004 and thereafter. This Motion concerns only the settlement that was agreed to on April 15, 2004. The parties at the conference and directly after agreed to all material terms of a settlement. The subsequent consent decree drafts and exchange of correspondence between the parties confirms the settlement. Plaintiffs have briefed and argued the majority of issues in their initial Motion to Enforce Settlement, however, they must not allow the Defendants to mar the record by arguing inconsistent, false and irrelevant factual points to

the Court.

Defendants' response appears to confuse the settlement conferences that took place and where the settlement agreement occurred. To be clear, settlement of this matter was reached at a settlement conference on April 15, 2004 in Judge Padova's chambers. The terms were that Springfield Township Defendants would pay $35,000 and in exchange, Plaintiffs would erect, *inter alia*, a 30,000 square foot building to contain recycling operations.[*] As part of the consideration of the settlement, no further monetary contribution would be needed from Plaintiffs. Defendants now, at the finalization stage of the settlement, seek for the first time, to have Plaintiffs pay permit fees and escrow monies which reach into the tens of thousands of dollars and were never a part of the original settlement agreement. All payment was one way from Defendants to Plaintiffs. Had Defendants desired any payment by Plaintiffs, Defendants surely would have raised it much earlier.

Furthermore, Defendants either seek to change the nature of the motion filed by Plaintiffs or to ignore it. For example, Defendants' claim is that Plaintiffs would not be bound by the *Pennsylvania Solid Waste Management Act*. This is simply not true. In the draft consent decree, which Defendants agreed to, it states: "Plaintiffs' rights to use their property is controlled by this Consent Decree *and the Pennsylvania Solid Waste Management Act*, 35 Pa.C.S. §6018, only." See Exhibit "C" to Plaintiffs' Motion to Enforce Settlement. Plaintiffs

---

[*]Judge Padova, with Defendants' consent, told Plaintiffs Defendants would pay a maximum of $35,000 and Plaintiffs accepted. The parties also agreed on the injunctive relief and were to merely work out the specific language in the consent decree.

do not seek to circumvent the law and, in fact, have agreed to be bound by it as stated above.

Defendants also continually refer back to a letter of November 22, 2002 written by Township Solicitor, James McNamara. That letter has no bearing on the settlement of this action. The settlement was reached at the conference of April 15, 2004, the in person discussion that followed and confirmed in subsequent phone conferences of May 16, 2004 and May 25, 2004. The settlement terms did not (and could not) include the letter of November 22, 2002 which was not sent to Plaintiffs, nor directed towards them.

Moreover, the November 22nd letter itself states that the Board of Supervisors has accepted the DelGuericos' operation and that it "would not be subject to violations" based on the longstanding nature of its operation. That letter also refers to the fact that Plaintiffs would discuss a "technical submission which would be *equivalent* to a land development submission concerning the construction of the building..." it goes on to further state that the review would be conducted to assure that the submission was "in technical compliance with the ordinance". See Exhibit "A" to Defendants Reply to Motion to Enforce Settlement. Defendants' own argument and citation to this letter indicates that the Plaintiffs would not be subject to Springfield Township's Land Development Ordinance.

Plaintiffs have merely stated in their motion what they have long been afraid Defendants would do following settlement; Defendants would agree to a settlement and then continue to harass and violate the civil rights of Plaintiffs in the execution of that settlement. As evidenced by the proposed Consent Decrees - approved in material part by Defendants

3

and then Solicitor McNamara, Plaintiffs have agreed that the Township engineer would review the DelGuericos' land development plan and that approval of that plan would ***not be unreasonably withheld***.  See Consent Decree Nos. 14-15.

Defendants inserted nothing about Plaintiffs' payment of fees to approve this building that ***Defendants want***.  Fees were never mentioned in the November 22, 2002 letter cited by Defendants or in the May 21, 2004 letter of James McNamara in response to the first consent decree.  The agreement has always been that Plaintiffs would not need to follow procedural requirements for the approval under the Springfield Township Zoning Land Development and Subdivision Ordinances, but that it would be "as near as practicable" in compliance with the requirements of that ordinance.  Again, this is to prevent Defendants from continually hauling Plaintiffs back into court to harass and violate their civil rights of Plaintiffs as they have done for the past fifteen (15) years.

This settlement was agreed upon with the idea that the continual harassment would stop.  Plaintiffs are being extremely conciliatory in the settlement which includes, at Plaintiffs' own expense, the erection of a building, the erection of a tree buffer, and the reduction in the number of trucks and hours of operation, so that they may finally have the peace and freedom to operate their business without the continual interference of Springfield Township and its elected officials.

Moreover, it has been contemplated in the proposed Consent Decree (and never objected to by any party), that the ***Springfield Township*** Solid Waste Ordinance/Law does not

apply to the Plaintiffs, their business operations or their property. See Consent Decree No. 21. It is not Plaintiffs' position that they will not follow the *Pennsylvania Solid Waste Management Act*, or the other ordinances as described by Defendants. Defendants appear to be trying to allege that Plaintiffs are attempting to illegally operate and illegally settle this matter with the Township. Nothing can be further from the truth. Plaintiffs are merely attempting to stop the continual harassment and interference with their business by the Township.

Plaintiffs have agreed to comply with the Pennsylvania Solid Waste Management Ordinance as stated in the proposed Consent Decree. They also have agreed, to submit their land development plan to the engineer for technical compliance. The only restriction on ordinances in the Consent Decree is one agreed upon by Defendants; that being that the *Springfield Township* Solid Waste Management Ordinance and/or Law does not apply to the Plaintiffs. This was done to preserve the longstanding grandfathered exemption the Plaintiffs have had since the original operation of their business. If Plaintiffs agreed to comply with the Springfield Township Solid Waste Ordinance/Law then they would be throwing away their grandfathered status. That was not and would never have been agreed to by Plaintiffs.

More importantly on April 15, 2004, the parties worked for four hours with Judge John R. Padova to settle this matter. They worked together for another ½ hour in the hall outside of the Court's Chambers. An agreement was reached that Plaintiffs would dismiss

the Hammill Defendants and would then complete a Consent Decree memorializing the settlement that they had agreed to that day. The settlement consisted of a $35,000 payment on behalf of the Defendants and agreement on the zoning issues. David Macfarlan, zoning counsel for Plaintiffs, and James McNamara, Solicitor of Springfield Township, even passed a written note between each other agreeing to certain material terms to settle this matter. Both parties consented to that settlement regarding operating conditions and conditions of the site where the DelGuericos' operations take place. No writing was necessary at the time the settlement was agreed to for it to be effective and enforceable. See *Green v. John H. Lewis & Co.,* 436 F.2d 389, 390 (3d Cir. 1970); *McCune v. First Judicial District of Pennsylvania Probation Department*, 99 F.Supp. 2d 565, 566 (E.D.Pa. 2000). There was clearly a meeting of the minds that all parties can attest to.

Defendants cite to the June 10, 2004 letter of James McNamara to David Macfarlan as evidence that Plaintiffs were attempting to circumvent the payment of costs and fees associated with construction. Defendants fail to note that this letter was written and sent *after* the material terms of settlement had been agreed upon. Defendants attempt to make it appear that Plaintiffs were aware of these purported fees and that they would have to pay these fees as evidenced by that writing of June 10th. This writing, however, was completed *after* not only the initial settlement conference of April 15, 2004, where the meeting of the minds took place and the material agreement was struck, but also after two subsequent phone conferences on May 14, 2004 and May 25, 2004. Moreover, James McNamara reviewed the

consent decree and sent a letter to Plaintiffs on May 21, 2004 which never mentioned anything about payment of fees. If it were an issue he surely would have brought it up as he attempts to do on June 10.

In fact, by raising this June 10th letter, Defendants are making Plaintiffs' argument that they are attempting to change the material terms of the agreement. Fees were ***never*** mentioned previously. The only issues mentioned by Springfield Township Solicitor, James McNamara in his May 21, 2004 letter are minor changes that were agreed to by Plaintiffs. He makes no mention of the fact that costs need to paid, or any other change is necessary until the June 10th letter. This comes after three separate conferences with Judge Padova where no changes were mentioned or needed to this settlement. The settlement of this action was agreed to on April 15, 2004 and Defendants are now attempting to change the material terms.

Defendants also attempt to parse the words of a letter of July 2, 2004 from Plaintiff's counsel to Defendants to conclude that a settlement had not been reached. That is absurd. The fact that Plaintiffs' counsel used the terms "so that we may resolve the case" does not mean that a settlement has not already been reached. It is clear that one had been reached and all the parties were doing was agreeing on, as Defendants themselves say in their response to our Motion at para. 9, "finalizing the wording of the Consent Decree." See Paragraph 9 of Defendants' Reply to Motion to Enforce Settlement. Defendants even agree a settlement was reached in their Motion to Reopen Entry of Default. They concoct some

reasoning that a settlement was not agreed to, that they take the mere attempt to get the decree executed to be a phantom claim that no settlement had been reached.

    Plaintiffs were never told and never expected to have to pay permit fees, escrows and engineering fees. It stands to reason that Plaintiffs, whose damages, costs and attorneys fees were more than triple the $35,000 sum Judge Padova recommended, would have insisted on more money if building fees would have to be paid. This is really a straw vindictive issue since the fees are charged by Defendants for Plaintiffs to build a building that they (Defendants) insist on and that Plaintiffs don't want. Defendants claim in their response that Plaintiffs were told throughout the litigation process, however, they show no evidence of this, nor can they cite one instance where this was conveyed to Plaintiffs on Plaintiffs' counsel. They can cite to no correspondence, no writing, not even to any phone conversation that this was the case. The reasoning is clear, Plaintiffs were never told in any manner whatsoever that Defendants' expected them to pay permit fees, escrows and engineering fees. In fact, it had been specifically agreed that these would not have to paid as part of the consideration for the settlement of this action.

    Plaintiffs would, under no circumstances, agree to an open ended payment of fees where Springfield Township Defendants can continue their harassing ways by continually adding more and more costs and requirements to Plaintiffs' construction. It was explicit and implicit in the settlement Plaintiffs agreed to on April 15th that these costs would not need to be paid. Defendants attempt to add the additional costs at this late date is merely another

attempt at doing what this suit was filed to resolve, harass and attempt to intimidate the Plaintiffs in the operation of their business.

Defendants are attempting an end run around the settlement that was agreed upon between the parties. What they have done demonstrates a complete lack of candor and civility. Defendants have agreed to a settlement, forgone any discovery and lured Plaintiffs into correctly believing they had settled this matter. Then at this late date, Defendants attempt to change the material terms of the agreement after discovery is closed and with a trial date looming.

### I.  SETTLEMENT WAS REACHED ON ALL MATERIAL TERMS ON APRIL 15, 2004

The facts are simple; the parties entered into a settlement agreement that is binding upon them. Once the parties express mutual assent to its material terms and conditions, the settlement agreement *is binding*. See *Mainline Feeders, Inc. v. Paramount Films Distribution Corporation*, 298 F.2d 801, 803 (3d Cir. 1962); *Pugh v. Superfresh Food Markets, Inc*. 640 F.Supp 1306, 1308 (E.D. Pa. 1986) (emphasis supplied) Most specifically a settlement agreement need not be reduced to writing to be enforceable. See *Green v. John H. Lewis & Company* 436 F.2d 389, 390 (3d Cir. 1970).

The parties in this matter clearly agreed to all material terms of the settlement in front of Judge Padova on April 15, 2004. The settlement did not need to be reduced to writing at the conference once the material terms had been agreed to by the parties. Defendants are now attempting to negate the settlement because they either have had a change of heart or wish

to continue their pattern of harassment and intimidation of Defendants which was why this suit was filed in the first place. Just because Defendants have had a change of heart after they have agreed to the settlement will not invalidate the agreement. See *Goode v. Pennsylvania R.R.*, 384 F.2d 989, 990 (3d Cir. 1967) ("the obligation to remain bound by a valid agreement of settlement duly entered into by counsel with the authority of his client is one which pervades the law"); See also *McCune v. First Judicial District of Pennsylvania Probation Department*, 99 F. Supp. 2d 565, 566 (E.D. Pa. 2000).

It is obvious that an agreement has been made and Defendants are attempting to back out of it. They complain in their response that it is clear that certain terms have been identified as issues and the matter has not been resolved, however, they have not supplied any issues that have been identified or have been supposedly ignored by the Consent Decrees. There has been absolutely no correspondence or evidence produced that issues have been ignored by Plaintiffs in the Consent Decrees. Once again, Defendants are attempting to change the terms of the settlement and harass and violate the civil rights of Plaintiffs.

Plaintiffs do not use this Motion to avoid paying any fees or costs, they are simply using the Motion to enforce the settlement validly agreed to between the parties on April 15, 2004. There are not seeking to be exempt from certain state laws as evidenced by the Consent Decree itself attached to their original Motion. Defendants' attempt to include this information is merely a red herring and distortion attempt to avoid what are the obvious facts

; that there is a settlement agreement reached on April 15, 2004.

## II. CONCLUSION

The parties have come to a settlement agreement on all material terms. A building that Defendants insist upon and that Plaintiffs do not want will be erected on the DelGuericos' property at their cost to settle this case. Plaintiffs will incur over six figures to purchase and erect Defendants' building. This will be done without payment of additional permit fees, escrow fees or any fees whatsoever paid to the Township, as has been agreed to by the Defendants. Now on the eve of what would have been the trial date when Defendants and their counsel knew Plaintiffs had taken no discovery and hired no experts in reliance upon the settlement, Defendants seek to try to play "fast and loose" to cancel the settlement and avoid their obligations. This should not be permitted by the Court.

*Respectfully submitted,*

*NEIL A. MORRIS*
*MARK D. CHIACCHIERE*
*Attorneys for Plaintiffs,*
*Tony DelGuerico, Leigh DelGuerico and DelGuerico's Wrecking & Salvage, Inc.*

**OF COUNSEL:**

**NEIL A. MORRIS ASSOCIATES, P.C.**
**Mellon Bank Center**
**1735 Market Street, 43rd Floor**
**Philadelphia, PA 19103**
**(215) 751-0600 (Tel.)**
**(215) 751-1425 (Fax)**
**nmorris@namapc.com**

**Date:   August 30, 2004**

## CERTIFICATION OF SERVICE

MARK D. CHIACCHIERE, Esquire, hereby certifies that a true and correct copy of *Plaintiffs' Reply Brief to Defendant Springfield Township's Response to Plaintiffs' Motion to Enforce Settlement Agreement* was served upon the following, *via* Fax and First Class Mail, Postage Prepaid, on August 30, 2004:

>David M. Maselli, Esquire
>Wright & O'Donnell
>15 East Ridge Pike, Suite 570
>Conshohocken, PA 19428
>
>Attorney for Defendants Springfield Township, Jeffrey Mease, Peter Lamana, Rodney Wieder, James Hopkins, Robert Zisko and Charles Halderman, Jr.

>_____
>MARK D. CHIACCHIERE
>*Attorney for Plaintiffs,*
>*Tony DelGuerico, Leigh DelGuerico and*
>*DelGuerico's Wrecking & Salvage, Inc.*

*OF COUNSEL:*

*NEIL A. MORRIS ASSOCIATES, P.C.*
*Mellon Bank Center*
*1735 Market Street, 43rd Floor*
*Philadelphia, PA 19103*
*Tel. (215) 751-0600*
*Fax (215) 751-1425*
*mchiacchiere@namapc.com*

*Date: August 30, 2004*